UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Clement B. Darkenwald, The Clement and Idona Darkenwald Family Limited Partnership, and Darkenwald & Sons Management Company, Inc., | ) ) ) ) | No.: 24-CV-4231 |
| Plaintiffs, | ) ) ) | **VERIFIED COMPLAINT** |
| vs. | ) ) ) | |
| D&Y Partners, LLC, The D&Y Family Limited Partnership, The John and Tonya Darkenwald Family Limited Liability Limited Partnership, The John F. Darkenwald Revocable Trust UAD June 26, 1986, The George and Deborah Yankoupe Family Limited Partnership, The Gilbert R. Darkenwald Family Limited Partnership, George Yankoupe, Deborah Yankoupe, The Estate of John F. Darkenwald, Gilbert R. Darkenwald, Casey Darkenwald, and Tonya Darkenwald, | ) ) ) ) ) ) ) | |
| Defendants. | | |

Plaintiffs Clement B. Darkenwald, The Clement and Idona Darkenwald Family

Limited Partnership, and Darkenwald & Sons Management Company, Inc. (collectively,

"**Plaintiffs**"), for their Complaint against Defendants D&Y Partners, LLC, The D&Y

Family Limited Partnership, The John and Tonya Darkenwald Family Limited Liability

Limited Partnership, the John F. Darkenwald Revocable Trust UAD June 26, 1986, The

Gilbert R. Darkenwald Family Limited Partnership, The George and Deborah Yankoupe Family Limited Partnership, George Yankoupe, Deborah Yankoupe, the Estate of John F. Darkenwald, Gilbert R. Darkenwald, Casey Darkenwald, and Tonya Darkenwald (collectively, "**Defendants**") state and allege as follows:

## PARTIES

1.    Plaintiff Clement Darkenwald ("**Clem**") is a resident of Hennepin County, State of Minnesota. Clem and his wife, Idona Darkenwald, are General Partners of Plaintiff The Clement and Idona Darkenwald Family Limited Partnership.  In addition, Clem is a shareholder and sole shareholder of Plaintiff Darkenwald & Sons Management Company, Inc.  Clem is also a member of Defendant D&Y Partners, LLC, owning a one-third interest in D&Y Partners LLC.

2.    Plaintiff The Clement and Idona Darkenwald Family Limited Partnership ("**Clem and Idona FLP**") is a Minnesota family limited partnership beneficially owned by Clem and Idona Darkenwald as General Partners.  Clem and Idona FLP holds a 24.5% membership interest in Defendant D&Y Family Limited Partnership.  Clem and Idona FLP has a principal place of business located at 7653 Quaday Ave. NE, Otsego, MN, 55330.

3.    Plaintiff Darkenwald & Sons Management Company, Inc. ("**Darkenwald & Sons**") is a privately-held Minnesota corporation with a principal place of business located at 7653 Quaday Ave. NE, Otsego, MN, 55330. Among other things, Darkenwald & Sons

provided management services for Defendant D&Y Family Limited Partnership for a significant period of time relevant to this dispute.

4. Defendant The D&Y Family Limited Partnership ("**D&Y FLP**") is a Minnesota limited partnership formed in or around December 26, 1995 by Gilbert M. Darkenwald and Billie V. Darkenwald. At all times relevant to this dispute, D&Y FLP has been comprised of Defendant D&Y Partners, LLC as General Partner, and four limited partners: Plaintiff Clem and Idona FLP, and Defendants The John and Tonya Darkenwald Family Limited Liability Limited Partnership, The Gilbert R. Darkenwald Family Limited Partnership, and The George and Deborah Yankoupe Family Limited Partnership. D&Y FLP's primary purpose is a real estate holding company. Its principal place of business is located at 7535 NE River Rd., Otsego, MN 55330.

5. Defendant D&Y Partners, LLC ("**D&Y LLC**") is a Minnesota limited liability company formed in 2006. At its inception, the members of D&Y LLC were Clem, Defendant John F. Darkenwald, and Defendant Gilbert R. Darkenwald. D&Y LLC holds a two-percent partnership interest in D&Y FLP and serves as the General Partner of D&Y FLP. The registered office for D&Y LLC is 7535 NE River Rd., Elk River, MN 55330.

6. Defendant The John and Tonya Darkenwald Family Limited Liability Limited Partnership ("**John and Tonya FLLLP**") is a Minnesota limited partnership. Upon information and belief, John Darkenwald was a General Partner of the John and Tonya FLLLP prior to his death, and both Defendant Casey Darkenwald and Defendant Tonya Darkenwald are currently the General Partners of the John and Tonya FLLLP. The John and Tonya FLLLP is a limited partner in D&Y FLP. Since 2022, the John and Tonya

FLLLP has purported to act as the Manager of D&Y LLC, thus making all managerial and operational decisions on behalf of D&Y LLC, individually and as General Partner of D&Y FLP.  Upon information and belief, the principal place of business of the John and Tonya FLLLP is 7535 NE River Rd., Otsego, MN 55330.

7.    Upon information and belief, Defendant the John F. Darkenwald Revocable Trust UAD June 26, 1986 (the "**John Darkenwald Trust**") is a Minnesota trust formed by John F. Darkenwald and Tonya Darkenwald in or around June 26, 1986 and amended and restated by the Second Amended and Restated document dated January 5, 2021.  Upon information and belief, John F. Darkenwald and Tonya Darkenwald have been the Trustees of the John Darkenwald Trust at all times relevant to this dispute. Further upon information and belief, the John Darkenwald Trust has, at times relevant to this dispute, purported to own a 33.33% membership interest in D&Y LLC.

8.    Defendant Estate of John F. Darkenwald ("**John**") was a Minnesota resident who resided at 16101 99th Pl. N., Apt. 272, Maple Grove, MN 55369.  John was an initial Member of D&Y LLC and a partner in the John and Tonya FLLLP at times relevant to this dispute. John Darkenwald passed away in March 2023.

9.    Defendant The Gilbert R. Darkenwald Family Limited Partnership (the "**Gilbert FLP**") is a Minnesota limited partnership.  Upon information and belief, Gilbert R. Darkenwald is the General Partner of the Gilbert Darkenwald FLP.  The Gilbert Darkenwald FLP is a limited partner in D&Y FLP.  Upon information and belief, the principal place of business of the Gilbert FLP is 7515 Quaday Ave. NE, Otsego, MN 55330.

10.     Defendant Gilbert R. Darkenwald ("**Gilbert Jr.**") is a Minnesota resident who resides at 7515 Quaday Ave. NE, Otsego, MN 55330.  Gilbert Jr. was an initial Member of D&Y LLC.

11.     Defendant The George and Deborah Yankoupe Family Limited Partnership ("**George and Deborah FLP**") is a Minnesota limited partnership.  Upon information and belief, George Yankoupe and Deborah Yankoupe are the General Partners of the George and Deborah FLP.  The George and Deborah FLP is a limited partner in D&Y FLP.  Upon information and belief, the principal place of business of the George and Deborah FLP is 17705 30th Ave. N., Plymouth, MN 55447.

12.     Defendant George Yankoupe ("**George**") is a Minnesota resident who resides at 17705 30th Ave. N., Plymouth, MN 55447. Upon information and belief, George is a General Partner of Defendant George and Deborah FLP, which is, in turn, a Limited Parter of Defendant D&Y FLP.

13.     Defendant Deborah Yankoupe ("**Deborah"**) is a Minnesota resident who resides at 17705 30th Ave. N., Plymouth, MN 55447. Upon information and belief, Deborah is a General Partner of Defendant George and Deborah FLP, which is, in turn, a Limited Parter of Defendant D&Y FLP.

14.     Defendant Casey Darkenwald ("**Casey**") is a Minnesota resident who resides at 15815 70th St. NE, Otsego, MN 55330.  Upon information and belief, Casey is General Partner of Defendant John and Tonya FLLLP and the owner and CEO of Defendant Darkenwald Corporation.  Casey is the son of John and Tonya Darkenwald.

15.     Defendant Darkenwald Corporation is a privately-held corporation with a registered address of 7535 NE River Rd., Elk River, MN 55330.  Darkenwald Corporation is party to an illegal agreement with D&Y FLP whereby Darkenwald Corporation receives $15,000 per month of ill-gotten payments.

16.     Defendant Tonya Darkenwald ("**Tonya**") is a Minnesota resident who resides at 16101 99th Pl. N., Apt. 272, Maple Grove, MN 55369.  Upon information and belief, Tonya has acted as General Partner of Defendant John and Tonya FLLLP at times relevant to this dispute, and was responsible, in part, for causing D&Y FLP to enter into the illegal agreement with Darkenwald Corporation.  Tonya is the wife of John and mother of Casey.

## JURISDICTION AND VENUE

17.     This Court has personal jurisdiction over the parties because Defendants reside in and have actively conducted business in this District, Defendants have purposefully availed themselves of the laws of Minnesota, and the events giving rise to this Complaint occurred in Minnesota.

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as the violations of the Racketeer Influenced Corrupt Organizations Act raise a federal question. 18 U.S.C. § 1961, *et seq.* The Court has supplemental jurisdiction over Plaintiffs' other claims pursuant to 28 U.S.C. § 1367.

19.     Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the defendants all reside in this District and a substantial portion of the events giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

20.    This dispute involves the operation of a family-owned real estate holding company, D&Y FLP which, at times relevant to this lawsuit, has been owned and operated for the direct or indirect benefit of four adult Darkenwald siblings.  More specifically, this dispute arises out of a series of related occurrences and transactions over the past several years in which the other members and managers of D&Y LLC and the other partners of D&Y FLP have breached duties owed to Clem, his entities, and his family, and have generally excluded Clem from participation in, and rights with respect to, D&Y LLC and D&Y FLP.

21.    Beginning in or around 2021 the Defendants began undertaking a series of intentional and knowing steps to deprive Clem and the Clem and Idona FLP of funds and interests rightfully owed to them. Together the Defendants wrongfully manipulated documents to cut off Clem and the Clem and Idona FLP from information and governance rights with respect to D&Y LLC and D&Y FLP, and entered into unlawful and fraudulent agreements to siphon money away from its rightful holders.  Defendants' concerted pattern of conduct amounts to racketeering, and has actively harmed Clem and the Clem and Idona FLP.

**A. Gilbert M. Darkenwald and Billie V. Darkenwald form D&Y FLP to Hold Family Real Estate Properties.**

22.    D&Y FLP was formed in or around December 26, 1995 by Gilbert M. Darkenwald ("**Gilbert Sr.**") and Billie V. Darkenwald ("**Billie**"), the patriarch and

matriarch, respectively, of the Darkenwald family. Upon its formation, the only partners in D&Y FLP were Gilbert Sr. and Billie.

23. Upon the formation of D&Y FLP, Gilbert Sr. and Billie contributed their respective ownership interests in seven parcels of real estate located in Wright County, Minnesota and one parcel of real estate located in Crow Wing County, Minnesota, with a total estimated value of $1,138,614.

24. Upon its formation, the real estate assets of D&Y FLP included:

    (a) an undeveloped parcel of land bordering Highway 101 and County Road 38 in Wright County, which was later largely acquired by the Minnesota Department of Transportation to install an off-ramp;

    (b) an undeveloped parcel of land bordering County Road 42 and Highway 101 in Wright County, currently consisting of approximately 35 acres of agricultural land;

    (c) approximately ten acres of agricultural land including a single-family home located at 7653 Quaday Ave. NE in Otsego, MN (the "**Farmhouse**");

    (d) approximately 100 acres of agricultural land in Wright County adjacent to the Farmhouse property;

    (e) an undeveloped parcel of land currently consisting of approximately seven acres between Highway 101 and the Mississippi River in Wright County;

(f) approximately 18 acres of undeveloped agricultural land near Highway 101 in Wright County, which was subsequently sold by D&Y FLP to Clem in or around 2000; and

(g) the Darkenwald family cabin located at 7985 North Shore Pines in Pine River, Minnesota (the "**Cabin**").  The Cabin was first acquired by Clement Keys Bird, the father of Billie, and has been in the Darkenwald family for nearly 100 years.

25.    In or around the late 1990s, D&Y FLP also acquired land in Pensacola, FL.  Over the course of the next several years, D&Y FLP developed a 53,000 sq. ft. multi-tenant industrial and commercial real estate development on the property, which became known as the "**Midway Plaza**."  The Midway Plaza opened in or around 2004 and was fully completed in or around 2006.

26.    In conjunction with the formation of D&Y FLP, Gilbert Sr. and Billie entered into The D&Y Family Limited Partnership Limited Partnership Agreement (the "**Partnership Agreement**").  A true and correct copy of the Partnership Agreement is attached hereto as **Exhibit 1** and is incorporated herein by reference.

27.    Pursuant to Article VII of the Partnership Agreement, all decisions regarding the management and affairs of D&Y FLP are to be made by the General Partners.

28.    Notwithstanding the same, Section 7.5 of the Partnership Agreement provides that certain actions of D&Y FLP cannot be made by the General Partners alone, but also require the consent of all Limited Partners.  Actions requiring unanimous approval of all Partners in D&Y FLP include: (a) the General Partners possessing any property of

D&Y FLP; (b) the General Partners assigning any right in specific property of D&Y FLP for any reason other than a "Partnership purpose"; and (c) admitting any person as a General or Limited Partner, except as expressly permitted in the Partnership Agreement.

29.     Article X of the Partnership Agreement imposes various restrictions on any Partner's ability to transfer all or any portion of such Partner's interest in D&Y FLP.

30.     Article XV of the Partnership Agreement provides various restrictions on the ability to amend the Partnership Agreement. Among them, the Partnership Agreement may not be amended: (a) in a manner that affects the economic interest of a Partner without that Partner's consent; (b) in a manner that alters the allocation of management responsibilities or control without the consent of all Partners; or (c) in any manner without a meeting if such changes would materially and adversely affect the economic rights of the Limited Partners.

31.     Following the formation of D&Y FLP, Gilbert Sr. and Billie divided partnership interests equally among their four children.

32.     Specifically, Gilbert Sr. and Billie assigned a 24.5% limited partnership interests to each of the Clem and Idona FLP, John and Tonya FLLLP, Gil FLP, and the George and Deborah FLP. Gilbert Sr. and Billie each retained a 1% partnership interest in D&Y FLP and continued to serve as General Partners of D&Y FLP.

**B. D&Y LLC Is Created To Operate as General Partner of D&Y FLP.**

33.     In or around November 2006, D&Y LLC was created with the intention of it operating as the General Partner of D&Y FLP.

34.     Three Darkenwald brothers—John Darkenwald, Clem, and Gilbert Jr.—were the initial members of D&Y LLC, each owning one-third of the entity.

35.     John, Clem, and Gilbert Jr.'s sister, Deborah Yankoupe, was also invited to own part of D&Y, LLC. She declined and does not own any portion of D&Y, LLC.

36.     On or about January 23, 2007, D&Y LLC was appointed as the General Partner of D&Y FLP. The George and Deborah FLP abstained from voting on this decision.

37.     On or about January 3, 2007, the members of D&Y LLC entered into that certain D&Y Partners, LLC Member Control Agreement (the "**Member Control Agreement**").  A true and correct copy of the Member Control Agreement is attached hereto as **Exhibit 2** and is incorporated herein by reference.

38.     Section 4.1 of the Member Control Agreement provides: "No Membership Interest, nor any portion thereof or interest therein, shall, directly or indirectly, be sold, transferred, assigned, pledged, hypothecated, encumbered, or otherwise disposed of, without the unanimous consent of the Members, except as otherwise specifically provided in this Article IV."

39.     On or about January 3, 2007, the members of D&Y LLC also entered into that certain Operating Agreement of D&Y Partners, LLC (the "**Operating Agreement**"). A true and correct copy of the Operating Agreement is attached hereto as **Exhibit 3** and is incorporated herein by reference.

40.     Section 2.1 of the Operating Agreement established D&Y LLC as a Board-managed limited liability company, further providing that "the business and affairs of the Company shall be managed by or under the direction of a Board of one or more governors."

41.    Clem, John, and Gil were appointed as the initial members of the Board and shared an equal voice with respect to the operation of D&Y LLC from its inception.

42.    Section 3.1 of the Operating Agreement required D&Y LLC to have a Chief Manager who would be appointed or elected by the Board of Governors.

43.    Pursuant to Section 3.2 of the Operating Agreement, the Chief Manager shall, among other things, "have general active management" of D&Y LLC, see that "all orders and resolutions of the Board are carried into effect", and "perform such other duties as may from time to time be prescribed by the Board."

44.    Section 3.8, Subdivision 3 of the Operating Agreement further provided that a manager of D&Y LLC could only be removed "by the affirmative vote of a majority of the governors present at a duly held Board meeting."

**C. Clem and Darkenwald & Sons Provide Valuable Management Services to D&Y FLP and D&Y LLC.**

45.    Between 2007 and early 2010, John served as the Chief Manager of D&Y LLC, with assistance from his son, Casey.

46.    During that time, the Midway Plaza proved to be a significant financial burden for D&Y FLP, with costs far exceeding the rental revenue it generated.

47.    By 2010, the finances of D&Y FLP were in critical condition, with the company losing money each year, caused largely by the lack of attention to, and mismanagement of, the Midway Plaza.

48.     After several previous discussions, on March 24, 2010, D&Y LLC held a special meeting attended by Clem, John, Gilbert Jr., Thomas and Paul Darkenwald (Clem's sons), Casey, and Tonya.

49.     During the March 24, 2010, special meeting, the attendees discussed the poor financial performance of D&Y LLC and D&Y FLP and potential alternatives for curtailing their losses. Among the alternatives discussed was the possibility of selling certain real estate holdings of D&Y FLP, including the Cabin.  All in attendance were opposed to selling real estate, if possible.

50.     Another option discussed at the March 24, 2010, special meeting was to have Darkenwald & Sons—and, specifically, Clem—take over management of the Midway Plaza property in Florida.

51.     At the March 24, 2010, special meeting, the attendees discussed the general framework of potentially retaining Darkenwald & Sons to provide management services, which included: (a) Clem periodically traveling to Florida to engage with the management company and tenants of the Midway Plaza; (b) D&Y FLP paying Darkenwald & Sons $2,500 per month for its services; and (c) Darkenwald & Sons receiving a commission if D&Y FLP sold the Midway Plaza.

52.     On March 25, 2010, Clem emailed a formal proposal to the entire group that had attended the previous day's meeting (the "**Management Proposal**"). A true and correct copy of the Management Proposal is attached hereto as **Exhibit 4** and is incorporated herein by reference.

53.     In the Management Proposal, Clem proposed that Darkenwald & Sons would "[a]ssume administrative and management responsibilities of D&Y FLP" and set forth goals and objectives for improving the financial performance of the Midway Plaza property.

54.     In the Management Proposal, Clem proposed the following compensation terms: (a) D&Y FLP would pay Darkenwald & Sons $2,500 per month on the first day of each month; (b) D&Y would pay Darkenwald & Sons' expenses, including Clem's airfare, car rental, taxi, gas, and other approved expenses; and (c) Darkenwald & Sons would receive a commission upon sale of the Midway Plaza in the amount of 4% in addition to any third-party broker's commission, or 10% if sold without a third-party broker.

55.     On or about April 21, 2010, D&Y LLC held a follow-up meeting attended by the same people who attended the March 24, 2010 meeting. At the meeting, all in attendance approved and accepted the Management Proposal (the "**Darkenwald & Sons Management Agreement**").

56.     On or about May 21, 2010, D&Y LLC held another meeting during which the proposal was formally documented. The minutes from that meeting were signed by Gilbert Jr.  A true and correct copy of those minutes are attached hereto as **Exhibit 5** and are incorporated herein by reference.

57.     In addition to approving the Darkenwald & Sons Management Agreement, the members of D&Y LLC also unanimously appointed Clem as Chief Manager and CEO of D&Y LLC, thus replacing John.

58.     Within weeks, Darkenwald & Sons began performing under the Darkenwald & Sons Management Agreement and took active control over the management of the Midway Plaza in an effort to improve its financial performance.  Among other things, Clem regularly traveled to Florida to visit the property, meet with third-party management groups and vendors, and improve tenant occupancy.

59.     In total, between early 2010 and 2021, Clem made more than 50 trips to Florida in connection with Darkenwald & Sons' management of the Midway Plaza.

60.     Darkenwald & Sons' active management of the Midway Plaza proved enormously beneficial to D&Y FLP.

61.     D&Y FLP's operating expenses exceeded its rental income every year from 2007-2010.  Indeed, in 2009, alone—the year before Darkenwald & Sons began managing the Midway Plaza property—D&Y FLP lost $60,000.

62.     By 2011—the first full year of Darkenwald & Sons' management of the Midway Plaza property—Clem had already made D&Y FLP profitable.  Indeed, by 2019, Midway Plaza's revenue more than doubled, and D&Y FLP generated over $250,000 of profit for its partners.

63.     From May 2010 through April 2011, D&Y FLP paid Darkenwald & Sons the agreed-upon $2,500/month management fee.

64.     While the financial performance of the Midway Plaza immediately improved under the management of Darkenwald & Sons, D&Y FLP continued to have cashflow constraints.  Accordingly, beginning on May 1, 2011, Clem agreed to defer $1,000 per

month of the $2,500 monthly management fee owed under the Darkenwald & Sons Management Agreement until D&Y FLP had more stable cash reserves.

65.    From May 2011 through October 2016, D&Y FLP paid Darkenwald & Sons this reduced monthly amount, and deferred the remainder of the management fee.

66.    Thereafter, D&Y FLP continued to experience periods of cash shortages. In order to once again assist D&Y FLP, in November 2016, Clem agreed to defer the full amount of the $2,500 monthly management fee owed to Darkenwald & Sons under the Darkenwald & Sons Management Agreement.  Once again, D&Y FLP and Darkenwald & Sons agreed that the deferred and accrued management fees would be repaid when D&Y FLP had sufficient cash holdings to do so.

67.    As part of his management of D&Y LLC, Clem proposed a means of ensuring that all four branches of the Darkenwald family would have equal access to the Cabin, while also reducing the financial burden imposed on D&Y FLP by owning the Cabin.  Specifically, in late 2016, Clem, in his role as Chief Manager of D&Y LLC, proposed that D&Y FLP, as landlord, enter into a lease directly with the four branches of the Darkenwald family whereby the families would pay rent to equally fund expenses associated with the Cabin.

68.    In the first half of 2018, Clem, John, Gilbert Jr., and Deborah discussed the possibility of entering into a lease governing use of the Cabin by each of the four branches of the Darkenwald family.

69.     The primary purpose behind a proposed Cabin lease was to formalize an agreement and procedure through which each branch of the family would equally fund costs associated with the Cabin.

70.     Ultimately, however, John refused to sign the proposed lease on behalf of his branch of the family.

71.     Accordingly, D&Y FLP entered into a lease with Clem, Gilbert Jr., and Deborah.

72.     John had full knowledge of the Cabin lease and knowingly refused to enter into it.

73.     Consistent with the lease, between 2018 and 2021, D&Y FLP issued an annual schedule for the Cabin, allocating rotating weeks equally to each of Clem, Gilbert Jr., and Deborah, and each of the three branches of the family was granted equal use of the Cabin.

74.     Consistent with the Cabin lease, the three branches of the Darkenwald family subject to the lease paid equal annual rent to D&Y FLP for the purpose of funding all Cabin-related expenses until Gilbert Jr. ceased making annual payments in 2021.

**D.  Defendants Abruptly Cut Clem out of the Management of D&Y LLC and D&Y FLP and Breach a Variety of Obligations owed to Clem and His Entities.**

75.     In or around May 2021, John and Gilbert Jr. executed that certain Written Action in Lieu of Meeting by the Members and Governors of D&Y Partners, LLC (the "**May 2021 Written Action**").  A true and correct copy of the May 2021 Written Action is attached hereto as **Exhibit 6** and is incorporated herein by reference.

76.     Pursuant to the May 2021 Written Action, John and Gilbert Jr. purportedly agreed to have D&Y LLC:

(a)   prepare and adopt an Amended and Restated Operating Agreement of D&Y LLC;

(b)    terminate the Lease for the Cabin;

(c)   in lieu of a Lease for the Cabin, notify the four branches of the Darkenwald family that each is authorized to use the Cabin according to a "fair and reasonable" schedule unilaterally issued by John and Gilbert Jr.;

(d)   reimburse each of the four branches of the Darkenwald family their share of fees that each had contributed for maintenance of the Cabin in 2021;

(e)   terminate D&Y LLC's legal counsel and "explore alternate legal services"; and

(f)   create an "Advisory Board Seat" on the D&Y LLC Board of Governors, and appoint Casey as the Governor holding the Advisory Board Seat.

77.     At the time of the May 2021 Written Action, Clem remained Chief Manager and a Member of D&Y LLC.

78.     Nevertheless, John and Gilbert Jr. did not consult Clem regarding the actions purportedly taken in the May 2021 Written Action.  Indeed, John and Gilbert Jr. did not even inform Clem of the May 2021 Written Action until the following month.

79.     By mid-2021, the Midway Plaza property had been fully occupied for several years, the lawsuit brought by John, Tonya, Casey, and the John and Tonya FLLLP had been resolved, and D&Y FLP finally had significant cash reserves. Accordingly, in or around June 2021, Clem, as Chief Manager, caused D&Y FLP to pay $85,500 toward the accrued management fees owed to Darkenwald & Sons.

80.     In or around September 2021, John and Gilbert Jr. again surreptitiously conspired to take additional actions to undermine the rights of Clem. Specifically, in September 2021, John and Gilbert Jr. executed that certain Written Action in Lieu of Meeting of the Members and Board of Governors of D&Y Partners, LLC (the "**September 2021 Written Action**"). A true and correct copy of the September 2021 Written Action is attached hereto as **Exhibit 7** and is incorporated herein by reference.

81.     Pursuant to the September 2021 Written Action, John and Gilbert Jr. purported to:

(a)     Acknowledge that all members and Governors of D&Y LLC "are Darkenwald family members that hold certain lease rights to" the Cabin;

(b)     Terminate the Cabin lease;

(c)     Establish that "certain Darkenwald Family members seeking to use and have the benefit of the Cabin" would be able to continue such use "consistent with a separate agreement agreed upon by those parties";

(d)     Direct John to "audit" and "reimburse" all contributions made by Darkenwald family members to "cover expenses and fees reasonably incurred as a result of [D&Y FLP's] ownership and lease of the Cabin";

(e)     Terminate "any leasehold interest of Darkenwald & Sons and Tom Darkenwald" in the Farmhouse

    (f)    Terminate and remove Clem from his position as "CEO"—or Chief Manager—of D&Y LLC; and

    (g)    Terminate "all contracts and/or agreements with Darkenwald & Sons Properties, Inc. regarding provision of property management services".

82.    Clem was not included in any meeting of the Board of Governors, and, to his knowledge, no vote of the Governors of D&Y LLC was taken prior to John and Gilbert Jr. executing the September 2021 Written Action, in direct violation of the Operating Agreement.

83.    Notwithstanding these actions taken by John and Gilbert Jr., the September 2021 Written Action expressly noted D&Y LLC's intention that "all Members remain involved in operational decisions of the Company."

84.    Incredibly, John and Gilbert Jr. proceeded to violate multiple provisions of the May 2021 Written Action and the September 2021 Written Action, despite being the authors and architects of those covert actions.

85.    Despite expressly stating in the September 2021 Written Action that "all Members remain involved in operational decisions of the Company," John and Gilbert Jr. did not consult Clem—the third member of D&Y LLC—about any of the operational decisions purportedly set forth therein.  Indeed, since early 2021, John and Gilbert Jr. have actively denied Clem any voice in the management and operational decisions of D&Y LLC, including failing to invite him to a single meeting regarding the company since that time.

86.     In addition, despite acknowledging the need for a "fair and reasonable" schedule for all Darkenwald family members to use the Cabin, Clem, his wife, and children have been actively excluded from any use of the Cabin since 2021.

87.     Clem has been irreparably harmed by his exclusion from the generations-old family Cabin.

88.     In addition, despite John and Gilbert Jr.'s express recognition of the need to account for and reimburse Cabin contributions made by all Darkenwald family members, D&Y FLP has not returned any of the funds Clem contributed with respect to the maintenance, expenses, and fees of the Cabin.

89.     Upon information and belief, all other Partners in D&Y FLP have received a refund of their Cabin contributions.

90.     Moreover, as of December 1, 2021, D&Y FLP owed Darkenwald & Sons $135,500 in unpaid management fees, a sum that still has not been paid to this date.

91.     At the same time John, Gilbert Jr., and Casey Darkenwald were actively excluding Clem from all discussions and decision-making regarding D&Y LLC and D&Y FLP, they also actively sought to use the entities as a vehicle to attack Clem, Clem's immediate family, and Darkenwald & Sons.

92.     Since 1999, when Gilbert Sr. and Billie were General Partners of D&Y FLP, Clem and/or Darkenwald & Sons have had an agreement to rent the Farmhouse—an old house located on one of the real estate parcels owned by D&Y FLP. During that time, Darkenwald & Sons has paid rent to D&Y FLP, maintained the property, and spent tens of thousands of dollars on improvements to the Farmhouse.

93.     Since approximately 2019, Darkenwald & Sons has allowed Clem's son, Thomas Darkenwald, and Thomas's wife and child, to use the Farmhouse as their home and residence.

94.     On November 12, 2021, D&Y LLC filed an Eviction Action Complaint, alleging that Darkenwald & Sons, Clem, and Thomas Darkenwald occupied the Farmhouse on a month-to-month tenancy that had been terminated on October 31, 2021, and sought to evict Thomas Darkenwald and his family from their home.

95.     On November 29, 2021, counsel for Darkenwald & Sons wrote to counsel for D&Y LLC and informed him that the allegations in the Eviction Action Complaint were inaccurate, that Darkenwald & Sons occupied the Farmhouse pursuant to a valid written lease, and provided D&Y LLC with a copy of the lease. In light of this information, Darkenwald & Sons requested that D&Y LLC withdraw its Eviction Action Complaint and cancel the eviction hearing.

96.     On December 7 and December 13, 2021, respectively, counsel for Darkenwald & Sons again wrote to counsel for D&Y LLC. In doing so, Darkenwald & Sons provided D&Y LLC with black-letter law demonstrating that the Eviction Action Complaint was futile and requesting that it be withdrawn.

97.     Inexplicably, however, D&Y LLC, through it purported manager, the John and Tonya FLLLP, refused to withdraw its Eviction Action Complaint and proceeded with the facially improper eviction action.

98.     On December 28, 2021, a trial was held in Wright County District Court. Following D&Y LLC's presentation of evidence, including a copy of the written lease,

Darkenwald & Sons, Clem, and Thomas Darkenwald moved for a directed verdict, which the court promptly granted.

99.    On January 10, 2022, the Wright County District Court issued a written Findings of Fact, Conclusions of Law, Order and Judgment finding that D&Y LLC "failed to prove the allegations in the complaint", ordering that Darkenwald & Sons and Thomas Darkenwald could remain in possession of the Farmhouse, and awarding Darkenwald & Sons, Clem, and Thomas Darkenwald a judgment for their costs and disbursements.

100.    At the same time that John, Gilbert Jr., and Casey were pursuing their bogus eviction action as a means of harassing and oppressing Clem, his entities, and his family, those three individuals continued to engage in further surreptitious actions to deprive Clem of his rights and reasonable expectations with respect to D&Y LLC.

101.    On or about December 17, 2021, John and Gilbert Jr. executed yet another Joint Written Action of Members and Board of Governors of D&Y Partners, LLC (the "**December 2021 Written Action**").  A true and correct copy of the December 2021 Written Action is attached hereto as **Exhibit 8** and is incorporated herein by reference. Once again, John and Gilbert Jr. neither consulted with Clem nor even informed him of the actions they intended to undertake in the December 2021 Written Action.

102.    Once again, no meeting of the full Board of Governors was held, and no vote of the Governors of D&Y LLC was taken prior to John and Gilbert Jr. executing the December 2021 Written Action.

103.    Pursuant to the December 2021 Written Action, John and Gilbert Jr. purported to:

(a)  Adopt and approve an Amended and Restated Operating Agreement for D&Y LLC (the "**Amended Operating Agreement**") which, among other things, purported to change the governance structure of D&Y LLC from a Board-managed limited liability company to a Manager-managed limited liability company; and

(b)  Appoint the John and Tonya FLLLP as the Manager of D&Y LLC.

104.  The Amended Operating Agreement sought to dramatically alter the governance of D&Y LLC and, in doing so, completely eliminate Clem's voice in the management and operations of the company.

105.  Among other things, through the Amended Operating Agreement, John and Gilbert Jr. sought to change the following material terms impacting the governance and operation of D&Y, LLC:

(a)  Revoke and replace the Operating Agreement and Member Control Agreement in their entirety, eliminating all protections provided to Clem and other members therein;

(b)  Convert D&Y LLC from a Board-managed company, in which Clem had an equal voice in operational decisions, to a Manager-managed company in which "all matters relating to the activities of the Company will be decided exclusively by the Manager" and Clem would have no voice in operational decisions;

(c)  Provide the Manager with the sole discretion regarding the amounts and timing of any distributions;

(d)  Provide that, "when taking any action, the Manager is free to consider their own interests exclusively without considering whether the action serves the interests or is in the best interest of the other Members, [D&Y LLC], or any other Person"; and

(e)  Alter the definition of "Permitted Transferee" in an attempt to permit John (or the John and Tonya FLLLP) to acquire Gilbert Jr.'s membership interest in D&Y LLC without obtaining the unanimous approval of all members, thus allowing John to acquire a super-majority interest in D&Y LLC without Clem's consent.

106.    Once again, John and Gilbert Jr. neither consulted with Clem nor informed him of the actions they intended to undertake in the December 2021 Written Action. Indeed, neither John nor Gilbert Jr. even told Clem that an Amended Operating Agreement had been drafted before purporting to adopt the Amended Operating Agreement on behalf of D&Y LLC.

107.    John and Gilbert Jr.'s primary motivations in secretly adopting an Amended Operating Agreement were to manufacture a way for John and his immediate family to take full control over D&Y LLC by paving the way for John to acquire Gilbert Jr.'s interest (thus achieving super-majority ownership status) while also eliminating Clem's position as a Governor—both actions that were expressly prohibited by the Operating Agreement and Member Control Agreement.

108.    Even after attempting to fundamentally alter the governance of D&Y LLC in a manner that deprived Clem of any voice in management, John and Gilbert Jr. continued to secretly alter the governance documents of D&Y LLC.  On or about January 31, 2022, John and Gilbert Jr. executed another Joint Written Action of Members and Manager of D&Y Partners, LLC (the "**January 2022 Written Action**"). A true and correct copy of the January 2022 Written Action is attached hereto as **Exhibit 9** and is incorporated herein by reference.

109.    According to the January 2022 Written Action, John and Gilbert Jr. determined that the definition of "Permitted Transferee" in the Amended Operating Agreement still was "not broad enough" to enable them to accomplish their desired, and improper, transfer of membership interests in D&Y LLC.

110.   In the January 2022 Written Action, John and Gilbert Jr. purported to authorize another amendment of the D&Y LLC governance documents—this time, an Amendment to the Amended Operating Agreement.

111.   Pursuant to the Amendment to the Amended Operating Agreement, John and Gilbert Jr. sought to further expand the definition of "Permitted Transferee" for the transparent purpose of allowing John to acquire Gilbert Jr.'s one-third interest in D&Y LLC without Clem's consent—a transaction that was expressly forbidden under both the original Operating Agreement and the improper Amended Operating Agreement.

112.   Indeed, John and Gilbert Jr. had actual knowledge that the Amended Operating Agreement and the Amendment to the Amended Operating Agreement were improper at the time they executed those documents.

113.   In fact, years earlier, all three members of D&Y LLC had discussed the possibility of amending the company's governance documents to alter the percentage of Members required to approve a transfer of membership interests to a family member.  A true and correct copy of an August 2012 email exchange discussing such an amendment is attached hereto as **Exhibit 10** and is incorporated herein by reference.

114.   At that time, the Leonard, Street and Deinard firm, which had been counsel for D&Y LLC since its formation and drafted its governance documents, advised the Members that in order to implement a change of the percentage of Members required to approve a transfer of membership interests, "you will need the approval of all three members."

115.    Incredibly, John and Gilbert Jr. not only ignored the advice of D&Y LLC's corporate counsel, but they also concealed from Clem each of these covert attempts to amend the D&Y LLC governance documents, as well as their ultimate goal of facilitating John's acquisition of Gilbert Jr.'s membership interest in D&Y LLC, for months.

116.    On March 9, 2022, Gilbert Jr. wrote to Clem and informed him that he had decided to sell nearly all of his assets to the John and Tonya FLLLP, including Gilbert Jr.'s membership interest in D&Y LLC and partnership interest in D&Y FLP—transfers that were expressly prohibited under the Member Control Agreement and the Partnership Agreement, respectively, without Clem's prior approval.

117.    Upon information and belief, on or prior to March 9, 2022, Gilbert Jr. purported to sell his entire membership interest in D&Y LLC to either the John Darkenwald Trust or the John and Tonya FLLLP, and Gilbert FLP purported to sell its entire partnership interest in D&Y FLP to the John and Tonya FLLLP without the approval of Clem and the Clem and Idona FLP, respectively.

118.    On March 9, 2022, Clem also received an email from Dennis Knoer, an attorney at the Taft law firm.  Mr. Knoer notified Clem that Taft represented D&Y LLC and D&Y FLP—a fact that had never been disclosed to Clem.  In addition, Mr. Knoer provided Clem with copies of the December 2021 Written Action, the January 2022 Written Action, and the Amended Operating Agreement.

119.    Prior to receiving Mr. Knoer's email on March 9, 2022, Clem knew nothing about the existence of the December 2021 Written Action, the January 2022 Written Action, the Amended Operating Agreement, or John and Gilbert Jr.'s conspiracy for

Gilbert Jr. to sell his interests in D&Y LLC and D&Y FLP to John, the John Darkenwald Trust, and/or the John and Tonya FLLLP in violation of the respective entities' long-standing governance agreements.

120.    Thereafter, John and his son, Casey—now acting as though they had unfettered authority over D&Y LLC and D&Y FLP—rapidly escalated their breaches of contractual and fiduciary duties owed to Clem and his family.

121.    On March 14, 2022, the Taft law firm—acting at the direction of the John and Tonya FLLLP—responded to a request for information previously made by Clem to D&Y LLC and D&Y FLP.  In the response, D&Y LLC and D&Y FLP refused to provide Clem with basic information regarding the entities, information which Clem had statutory and fiduciary rights to receive.

122.    Thereafter, on at least four separate occasions, Clem and the Clem and Idona FLP made written requests for records from D&Y LLC pursuant to Minn. Stat. § 322C.0410 and from D&Y FLP pursuant to Minn. Stat. § 321.0304.  On each occasion, D&Y LLC and D&Y FLP, respectively, have refused to provide Clem with basic and essential information in violation of his statutory and fiduciary rights.

123.    On or about March 24, 2022, Casey Darkenwald, acting in his role as General Partner of the John and Tonya FLLLP, executed a Written Action of General Partner of D&Y FLP purporting to adopt that certain Second Amendment to the D&Y FLP Limited Partnership Agreement (the "**Second Amendment to Partnership Agreement**").  A true and correct copy of the March 24, 2022 Written Action and the Second Amendment to

Partnership Agreement is attached hereto as **Exhibit 11** and incorporated herein by reference.

124.    The Second Amendment to Partnership Agreement purported to "amend and restate the partnership schedule" of D&Y FLP "to reflect the transfers of partnership units" from Gilbert Jr. to the John & Tonya FLLLP "and the current ownership of partnership units" of D&Y FLP.

125.    According to the March 24, 2022 Written Action, Casey Darkenwald unilaterally determined that the Second Amendment to Partnership Agreement "is in the best interests of [D&Y FLP]" and "will not materially and adversely affect the economic rights of the Limited Partners."

126.    Likewise, on or about March 24, 2022, Casey Darkenwald, acting in his role as General Partner of the John and Tonya FLLLP, executed a Written Action of the Manager of D&Y Partners, LLC, purporting to adopt that certain Amendment to Schedule I of the Amended and Restated Operating Agreement (the "**Amended Schedule of Members**").  A true and correct copy of the March 24, 2022 Written Action and the Amended Schedule of Members is attached hereto as **Exhibit 12** and incorporated herein by reference.

127.    According to the March 24, 2022 Written Action and the Amended Schedule of Members, Gilbert Jr. purportedly sold his one-third interest in D&Y LLC to the John and Tonya FLLLP.  In addition, the Amended Schedule of Members reflected that both the John Darkenwald Trust and the John and Tonya FLLLP now purported to be Members of D&Y LLC—transfers which Clem was neither aware of nor did he approve.

128. In April 2022, Clem wrote to John and Gilbert Jr. on two occasions asking for a 2022 Cabin schedule. On both occasions, John and Gilbert Jr. ignored Clem's request.

129. On June 3, 2022, Clem again wrote to John and Gilbert Jr., expressing concerns regarding his exclusion from management, operations, and discussions regarding D&Y LLC and D&Y FLP.

130. In the June 3, 2022 email, Clem noted that he had not been invited to a single meeting regarding the entities since June 2021 and that he had been denied use of the family Cabin in both 2021 and 2022. Clem also highlighted numerous acts of oppression he had experienced as a Member of D&Y LLC and a Partner in D&Y FLP, and requested that the companies, Members, and Partners include him in operational discussions and decisions.

131. Once again, John and Gilbert Jr. ignored Clem's request.

132. On June 7, 2022, Clem wrote to D&Y FLP and, for the first time, demanded payment in full of the unpaid management fees owed to Darkenwald & Sons. D&Y FLP ignored this demand and failed to remit payment.

**E. John, Casey, Tonya, and the John and Tonya FLLLP Pilfer D&Y FLP and Waste Its Assets.**

133. Following the purported appointment of the John and Tonya FLLLP as the Manager of D&Y LLC, John, Casey, and Tonya began blatantly wasting the assets of D&Y FLP and using those assets for their personal gain, both directly and through companies they own.

134. Effective July 27, 2022, D&Y FLP (now under the purported control of the John and Tonya FLLLP, as Manager of the General Manager) entered into an Asset

Management Agreement with Darkenwald Corporation (the "**Asset Management Agreement**"). A true and correct copy of the Asset Management Agreement is attached hereto as **Exhibit 13** and incorporated herein by reference.

135.   Upon information and belief, the Asset Management Agreement was executed after July 27, 2022, but was back-dated to that date.

136.   Tonya signed the Asset Management Agreement on behalf of D&Y FLP, identifying herself as the General Manager of the John and Tonya FLLLP.

137.   Casey signed the Asset Management Agreement on behalf of Darkenwald Corporation, identifying himself as the "owner" of Darkenwald Corporation.

138.   Pursuant to the Asset Management Agreement, D&Y FLP agreed to pay Darkenwald Corporation an extraordinary monthly fee of $15,000, plus a commission in the event D&Y FLP sold any of its real estate assets, plus a "refinancing fee" in the event D&Y FLP refinanced any of its assets.

139.   In other words, at the same time that D&Y FLP refused to pay Darkenwald & Sons the mere $2,500 per month management fee that was owed to it, Casey and his mother, Tonya, caused D&Y FLP to enter into an agreement paying Casey's company at least six times that amount to do considerably less work than Darkenwald & Sons undertook from 2010 through 2021.

140.   Despite Clem and Idona FLP's role as Limited Partner of D&Y FLP, Clem was not provided a copy of the Asset Management Agreement until November 2023.

141.   On or around August 1, 2022 the John and Tonya FLLLP caused D&Y FLP to sell the Midway Plaza for $4,608,277.00.

142.    Following the sale of the Midway Plaza, the John and Tonya FLLLP caused D&Y FLP to pay Darkenwald Corporation a "commission" in the amount of $46,083.

143.    Moreover, even after selling the Midway Plaza—the only D&Y FLP asset that required active management—the John and Tonya FLLLP continued to cause D&Y FLP to pay Darkenwald Corporation $15,000 per month as a management fee.  Incredibly, since selling the Midway Plaza, D&Y FLP's only income consists of the monthly rent Darkenwald & Sons pays for the Farmhouse and $4,000 annual rent received from a third-party to farm a 35-acre agricultural parcel.   In other words, D&Y FLP is paying Darkenwald Corporation $180,000 per year in management fees to oversee properties generating just $13,600 in total annual income.

144.    At the time of the sale of the Midway Plaza, D&Y FLP and D&Y LLC, collectively, owed money to two lenders.

145.    First, D&Y FLP owed more than $1,000,000 to the Bank of Elk River pursuant to a loan it obtained on August 31, 2020 in the amount of $1,134,687.71, with a maturity date of August 19, 2025.

146.    Upon information and belief, Clem is the sole personal guarantor of the loan with the Bank of Elk River.

147.    Second, D&Y FLP and D&Y LLC were each obligors under promissory notes issued to two related Darkenwald family trusts—the Gilbert M. Darkenwald Trust and the Billie V. Darkenwald Trust (collectively, the "Trust").

148.    Rather than repay the Bank of Elk River, however, the John and Tonya FLLLP caused D&Y FLP and D&Y LLC to use the Midway Plaza proceeds to pay off the promissory notes held by the Trust.

149.    The trustee of the Trust is GBP Trust Company, LLC, a single-member limited liability company that is owned and controlled by Casey.

150.    Within months of D&Y FLP and D&Y LLC repaying the notes owed to the Trust, Casey caused the Trusts to distribute approximately $1,200,000 to only the John and Tonya FLLLP and to the George and Deborah Yankoupe FLP. Casey also caused the trusts to distribute $330,000 worth of additional assets to George and Deborah Yankoupe individually and the John and Tonya FLLLP. On information and belief, Casey seeks to distribute an additional $650,000 of real estate to Casey's family.

151.    The George and Deborah Yankoupe FLP is owned by Deborah Yankoupe—the sister of John, Clem, and Gil—and her husband, George Yankoupe.

152.    Clem, who is also a beneficiary of the Trust, received no disbursements, and did not even learn of the distributions until months later when Casey was required to produce an accounting on behalf of the Trust.

153.    Upon information and belief, the John and Tonya FLLLP repaid the note to the Trust, rather than repaying the loan to the Bank of Elk River or distributing the funds pro rata to the limited partners of D&Y FLP, in a transparent and illegal attempt to disproportionately distribute funds to itself and to the George and Deborah FLP, while denying the Clem and Idona FLP the pro rata benefit it is entitled to receive as a limited partner of D&Y FLP.

154.    In December 2022, the John and Tonya FLLLP also caused D&Y FLP to transfer ownership of $47,580.50 of equipment out of D&Y FLP.  Upon information and belief, the equipment was transferred to Casey in exchange for no consideration.

155.    After months of silence and ignored inquiries directed to John and Gilbert Jr., Clem wrote to Casey—the purported Manager of D&Y LLC—on December 23, 2022.

156.    In the December 23, 2022 letter, Clem again raised the concerns he previously expressed to John and Gilbert Jr. regarding the improper Amended Operating Agreement and the improper appointment of the John and Tonya FLLLP as Manager of D&Y LLC.  In addition, Clem once again made a statutory demand for basic financial and operational documents pertaining to D&Y LLC and D&Y FLP.

157.    On January 13, 2023, the John and Tonya FLLLP—through counsel for D&Y LLC and D&Y FLP—responded to Clem's letter.  Among other things, the letter stated that Clem "will no longer have access to any [D&Y LLC and D&Y FLP] property or assets, including the [Cabin]."

158.    The John and Tonya FLLLP has followed through with the threat in the January 13, 2023 letter from counsel, and has continued to exclude Clem, his wife, and their children from using the Cabin at all times.

159.    In the January 13, 2023 letter from counsel, the John and Tonya FLLLP—through counsel for D&Y LLC and D&Y FLP—once again made threats regarding the Farmhouse, where Clem's son, Thomas, and his family reside. Specifically, the letter threatened to engage "an independent third-party inspection company to inspect the [Farmhouse] and to ensure that the property, and its current use, complies with all

applicable legal requirements, whether federal, state, county, city, or otherwise." The letter further threatened to assess any costs of "repair or environmental remediation" against Darkenwald & Sons.

160.    At the time of the letter, neither the John and Tonya FLLLP, D&Y LLC, nor D&Y FLP had any legitimate reason to believe Darkenwald & Sons or Thomas Darkenwald were using the Farmhouse for any improper purpose. Rather, the threat to inspect the Farmhouse and assess costs was made in an effort to harass and retaliate against Clem and his family in violation of numerous provision of Minn. Stat. Ch. 504B.

161.    Since at least 2023, D&Y FLP and D&Y LLC have continued to deny Clem and the Clem and Idona FLP access to basic financial and operational information regarding D&Y FLP and D&Y LLC, respectively.

162.    Notwithstanding the same, the limited information Clem has received reveals that D&Y FLP has been spending tens of thousands of dollars on land surveys, appraisal services, construction costs, and other expenses typically associated with real estate development and/or sale.

163.    As a result of these expenses and the $15,000 monthly management fee being siphoned to Darkenwald Corporation, D&Y FLP is rapidly running out of cash.

164.    Since the sale of the Midway Plaza, D&Y FLP does not have any significant sources of monthly revenue.

165.    Upon information and belief, D&Y LLC and D&Y FLP will run out of money no later than the fourth quarter of 2024.

166.    In the event D&Y FLP runs out of money and is unable to pay its debts, it is likely that the Bank of Elk River will seek to hold Clem personally liable on his personal guaranty of D&Y FLP's loan obligation and/or D&Y FLP will be required to liquidate certain real estate holdings.

167.    Each of these potential outcomes poses a material threat of irreparable harm to Clem, personally, as well as the other limited partners of D&Y FLP.

168.    Several of the breaches and other wrongdoings perpetrated by the John and Tonya FLLLP since its purported appointment as Manager of D&Y LLC impact all members of D&Y LLC and partners in D&Y FLP.

169.    However, any demand by Plaintiffs to have the John and Tonya FLLLP investigate itself, Casey, John, or Tonya—the individuals acting on behalf of the John and Tonya FLLLP at times relevant to this Complaint—would be futile.

170.    Casey is both a partner in the John and Tonya FLLLP and an owner of Darkenwald Corporation.  Accordingly, any demand made to Casey that the John and Tonya FLLLP investigate the propriety of the Asset Management Agreement between D&Y FLP and Darkenwald Corporation would be futile.

171.    Likewise, Tonya is both a partner in the John and Tonya FLLLP and the signatory of the Asset Management Agreement on behalf of D&Y FLP.  Accordingly, any demand made to Tonya that the John and Tonya FLLLP investigate the propriety of the Asset Management Agreement between D&Y FLP and Darkenwald Corporation would be futile.

172.   In addition, Casey is both a partner in the John and Tonya FLLLP and the sole member of GBP Trust Company, LLC, the trustee of the Trust.  Accordingly, any demand that the John and Tonya FLLLP investigate the legitimacy of its decision to transfer funds to the Trust, which, subject to the control of Casey, then disbursed those funds to the John and Tonya FLLLP would be futile.

173.   Simply put, neither the John and Tonya FLLLP, nor the individuals acting on its behalf, are reasonably likely to investigate themselves for the derivative claims set forth in this Complaint.

## COUNT I
### BREACH OF CONTRACT
### (By Darkenwald & Sons against D&Y FLP)

174.   Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

175.   In April 2010, D&Y LLC, as General Partner of D&Y FLP, engaged Darkenwald & Sons to act as property manager for D&Y FLP with respect to the Midway Plaza, a commercial real estate holding located in Pensacola, Florida.

176.   Accordingly, in April 2010, D&Y FLP and Darkenwald & Sons entered into the Darkenwald & Sons Management Agreement.

177.   The Darkenwald & Sons Management Agreement is a valid and binding contract.

178.   Pursuant to the Darkenwald & Sons Management Agreement, the parties agreed: (a) D&Y FLP would pay Darkenwald & Sons $2,500 per month on the first day of each month; (b) D&Y would pay Darkenwald & Sons' expenses, including Clem's airfare,

car rental, taxi, gas, and other approved expenses; and (c) Darkenwald & Sons would receive a commission upon sale of the Midway Plaza in the amount of 4% above any third-party broker's commission, or 10% if sold without a third-party broker.

179.    Beginning in 2011, Darkenwald & Sons agreed to defer some of its monthly management fee until D&Y FLP was in a stronger cash position.

180.    In 2016, Darkenwald & Sons agreed to defer all of its monthly management fee until D&Y FLP was in a stronger cash position.

181.    At all times, Darkenwald & Sons performed all of its obligations under the Darkenwald & Sons Management Agreement.

182.    By December 2021, the principal amount of accrued and unpaid management fees owed to Darkenwald & Sons under the Darkenwald & Sons Management Agreement amounted to at least $135,500.

183.    By 2022, D&Y FLP was in a stable financial and cash position.  Accordingly, on June 7, 2022, Darkenwald & Sons demanded payment of the accrued and unpaid management fees owed to it under the Darkenwald & Sons Management Agreement.

184.    D&Y FLP refused to pay the deferred management fees.

185.    In or around July 2022, D&Y FLP sold the Midway Plaza for more than $4,600,000.

186.    As a result of the sale of the Midway Plaza, Darkenwald & Sons is entitled to a commission in the amount of at least 4% of the sale price.

187.    However, D&Y FLP has failed and refused to pay the commission.

188.    D&Y FLP's failure to pay the deferred management fees and commission constitutes a breach of the Darkenwald & Sons Management Agreement.

189.    As a direct and proximate result of the foregoing, Darkenwald & Sons has suffered damages in an amount to be determined at trial, and is entitled to a money judgment in the amount of the deferred management fees, unpaid commission, interest, and its costs in bringing this action.

**COUNT II**
**BREACH OF FIDUCIARY DUTY**
**(By Clem Darkenwald Against D&Y LLC, John F. Darkenwald, Gilbert R. Darkenwald, Casey Darkenwald, the John and Tonya FLLLP, and the John Darkenwald Trust)**

190.    Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

191.    At all times material to the allegations in this Complaint, Clem has been a one-third Member of D&Y LLC.

192.    As co-Members of D&Y LLC, John, Gilbert Jr., and to the extent it claims to be a Member, the John and Tonya FLLLP and/or the John Darkenwald Trust, owe fiduciary duties to Clem under both Minn. Stat. ch. 322C and Minnesota common law including, but not limited to, the duty to act openly, honestly, and fairly toward Clem and in a manner consistent with his reasonable expectations as a Member of a closely-held company.

193.    In addition, John, Gilbert Jr., and Casey, as Board members of D&Y LLC, and the John and Tonya FLLLP , as the purported Manager of D&Y LLC, owe fiduciary duties to Clem under both Minn. Stat. ch. 322C and Minnesota common law including, but

not limited to, the duty to act openly, honestly, and fairly toward Clem and in a manner consistent with his reasonable expectations as a Member of a closely-held company.

194.    As set forth above in greater detail, John, Gilbert Jr., Casey, and the John and Tonya FLLLP have breached their respective fiduciary duties owed to Clem including, but not limited to, their roles in the following actions:

(a)    Amending, altering, and/or repealing the D&Y LLC Operating Agreement and Member Control Agreement without notice to Clem or proper approval;

(b)    Purportedly transferring Gilbert Jr.'s Membership interest in D&Y LLC to John and/or the John and Tonya FLLLP and/or the John Darkenwald Trust without Clem's consent, and in violation of the D&Y LLC Operating Agreement and Member Control Agreement;

(c)    Repeatedly denying Clem access to information regarding D&Y LLC's activities, financial condition, and other circumstances material to Clem's rights and interests as a Member of D&Y LLC;

(d)    Discriminating and retaliating against, and treating Clem in a manner inferior to other Members, and otherwise acting in a manner contrary to Clem's reasonable expectations as a Member of D&Y LLC by, among other things, pursuing a futile and improper eviction action against Clem and Darkenwald & Sons and otherwise acting in a manner that is threatening and unfair with respect to occupancy of the Farmhouse; denying Clem and his family access to the Cabin; failing

and refusing to return funds contributed by Clem for maintenance of the Cabin; taking actions requiring a vote of the members of D&Y LLC without notice to Clem or a meeting and opportunity to vote; and denying Clem the opportunity to participate in meetings and otherwise have a voice in the management and operations of D&Y LLC.

195.    As a direct and proximate result of the foregoing, Clem has suffered irreparable harm, as well as monetary damages.  Accordingly, Clem is entitled to a judgment in the form of equitable relief, injunctive relief, and monetary damages in an amount to be determined at trial, including interest, attorneys' fees, and costs incurred in this dispute.

## COUNT III
## BREACH OF FIDUCIARY DUTY
**(By Clem Darkenwald on behalf of D&Y LLC Against the John and Tonya FLLLP, John F. Darkenwald, Gilbert R. Darkenwald, Casey Darkenwald, Tonya Darkenwald, and the John Darkenwald Trust)**

196.    Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

197.    D&Y LLC is a Minnesota limited liability company governed by Minn. Stat. ch. 322C and Minnesota common law.

198.    As Members and/or Governors of D&Y LLC, John, Gilbert Jr., and Casey owe a fiduciary duty to D&Y LLC to, among other things, act with a duty of care and in manner that is in the best interests of D&Y LLC and its Members.

199.    As the purported Manager of D&Y LLC, the John and Tonya FLLLP owes a fiduciary duty to D&Y LLC to, among other things, act with a duty of care and in manner that is in the best interests of D&Y LLC and its Members.

200.    As the purported General Managers of the John and Tonya FLLLP, Tonya and Casey owe a fiduciary duty to D&Y LLC to, among other things, act with a duty of care and in manner that is in the best interests of D&Y LLC and its Members and to exercise reasonable business judgment when undertaking actions on behalf of D&Y LLC.

201.    As set forth above in greater detail, John, Gilbert Jr., Casey, Tonya, and the John and Tonya FLLLP have breached their respective fiduciary duties owed to D&Y LLC by, among other things, their respective roles in the following actions:

(a)    Amending, altering, and/or repealing the D&Y LLC Operating Agreement and Member Control Agreement without proper notice and approval of the Members of D&Y LLC, and changing the core character of D&Y LLC from a Board-managed limited liability company to a Manager-managed limited liability company without proper authority to do so;

(b)    Participating in purported transfers of Membership interests in D&Y LLC from Gilbert Jr. to the John and Tonya FLLLP and/or the John Darkenwald Trust in violation of the governance agreements of D&Y LLC; and

(c)    Wasting the assets and resources of D&Y LLC

202.    As a direct and proximate result of the foregoing, D&Y LLC and its Members have suffered irreparable harm, as well as monetary damages.  Accordingly, D&Y LLC is entitled to a judgment in the form of equitable relief (reforming the governance documents of D&Y LLC, repealing any improper amendments to the same, voiding and rescinding any improper transfers of Membership interests, and additional equitable relief up to and including judicial dissolution of D&Y LLC pursuant to Minn. Stat. §322C.0701), injunctive relief, and monetary damages in an amount to be determined at trial, including interest, attorneys' fees, and costs incurred in this dispute.

## COUNT IV
## BREACH OF FIDUCIARY DUTY
**(By the Clem and Idona FLP Against the John and Tonya FLLLP, the Gilbert FLP, the George and Deborah FLP, Tonya Darkenwald, Casey Darkenwald, and D&Y LLC )**

203.    Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

204.    D&Y FLP is a Minnesota limited partnership governed by Minn. Stat. ch. 321 and Minnesota common law.

205.    At all times relevant to this dispute, the Clem and Idona FLP has been a limited partner in D&Y FLP, entitled to the rights and protections granted to limited partners under Minn. Stat. ch. 321, the Partnership Agreement, and Minnesota common law.

206.    At all times relevant to this dispute, the John and Tonya FLLLP, the Gilbert FLP, and the George and Deborah FLP have been limited partners in D&Y FLP, and owe various fiduciary, statutory, and common law obligations to the other limited partners in D&Y FLP, including the Clem and Idona FLP.

207.    At all times relevant to this dispute, D&Y LLC has been the General Partner of D&Y FLP, and owes various fiduciary, statutory, and common law obligations to the limited partners in D&Y FLP, including the Clem and Idona FLP.

208.    At various times relevant to this dispute, the John and Tonya FLLLP has purported to be the Manager of D&Y LLC and make governance decisions on behalf of D&Y LLC as General Partner of D&Y FLP.

209.    At various times relevant to this dispute, Casey and Tonya, respectively, have acted as the General Partner(s) of the John and Tonya FLLLP, in charge of acting on behalf of the John and Tonya FLLLP in its purported role as Manager of D&Y LLC and, thus, General Partner of D&Y FLP.

210.    As set forth above in greater detail, the John and Tonya FLLLP, the Gilbert FLP, the George and Deborah FLP, Casey, Tonya, and D&Y LLC have breached their respective fiduciary duties owed to the Clem and Idona FLP in numerous respects including, but not limited to, their roles in the following actions:

(a)    Purportedly transferring the Gilbert FLP partnership interest in D&Y FLP to the John and Tonya FLLLP without proper consent, and in violation of the Partnership Agreement;

(b)    Repeatedly denying the Clem and Idona FLP access to information regarding D&Y FLP's activities, financial condition, and other circumstances reasonably related to the Clem and Idona FLP's rights and interests as a limited partner in D&Y FLP; and

(c)     Discriminating and retaliating against, and treating the Clem and Idona FLP in a manner inferior to other limited partners, and otherwise acting in a manner contrary to the Clem and Idona FLP's reasonable expectations as a limited partner in D&Y FLP by, among other things, denying Clem, his family, and the partners in the Clem and Idona FLP access to the Cabin in violation of, among other things, Minn. Stat. ch. 321; failing and refusing to return funds contributed by the Clem and Idona FLP for maintenance of the Cabin; denying the Clem and Idona FLP the opportunity to participate in meetings regarding D&Y FLP; and transferring money and other assets out of D&Y FLP to the detriment of the Clem and Idona FLP and Clem, as personal guarantor of D&Y FLP's loan from the Bank of Elk River.

211.    As a direct and proximate result of the foregoing, the Clem and Idona FLP has suffered irreparable harm, as well as monetary damages.  Accordingly, the Clem and Idona FLP is entitled to a judgment in the form of equitable relief (up to and including the judicial dissolution of D&Y FLP), injunctive relief, and monetary damages in an amount to be determined at trial, including interest, attorneys' fees, and costs incurred in this dispute.

## COUNT V
### CONSPIRACY TO BREACH FIDUCIARY DUTY
### (By the Clem and Idona FLP Against All Defendants)

212.    Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

213.    D&Y FLP is a Minnesota limited partnership governed by Minn. Stat. ch. 321 and Minnesota common law.

214.    At all times relevant to this dispute, the Clem and Idona FLP has been a limited partner in D&Y FLP, entitled to the rights and protections granted to limited partners under Minn. Stat. ch. 321, the Partnership Agreement, and Minnesota common law.

215.    At all times relevant to this dispute, the John and Tonya FLLLP, the Gilbert FLP, and the George and Deborah FLP have been limited partners in D&Y FLP, and owe various fiduciary, statutory, and common law obligations to the other limited partners in D&Y FLP, including the Clem and Idona FLP.

216.    At all times relevant to this dispute, D&Y LLC has been the General Partner of D&Y FLP, and owes various fiduciary, statutory, and common law obligations to the limited partners in D&Y FLP, including the Clem and Idona FLP.

217.    At various times relevant to this dispute, the John and Tonya FLLLP has purported to be the Manager of D&Y LLC and make governance decisions on behalf of D&Y LLC as General Partner of D&Y FLP.

218.    At various times relevant to this dispute, Casey and Tonya, respectively, have acted as the General Partner(s) of the John and Tonya FLLLP, in charge of acting on behalf

of the John and Tonya FLLLP in its purported role as Manager of D&Y LLC and, thus, General Partner of D&Y FLP.

219.   At all times relevant to this dispute, George and Deborah, respectively, have acted as the General Partner of the George and Deborah FLP, in charge of acting on behalf of the George and Deborah FLP in its role as Limited Partner of D&Y FLP.

220.   As set forth above in greater detail, the John and Tonya FLLLP, the Gilbert FLP, the George and Deborah FLP, Casey, Tonya, and D&Y LLC have breached their respective fiduciary duties owed to the Clem and Idona FLP in numerous respects including, but not limited to their roles in those actions described in Paragraphs 208 (a) – (c).

221.   Defendants acted in concert to breach the fiduciary duties owed by D&Y FLP to Clem and Idona FLP, as part of a common plan or purpose.

222.   Defendants manifested a meeting of the minds to achieve their joint purpose of breaching the fiduciary duties owed by D&Y FLP to Clem & Idona FLP.

223.   Defendants either all individually committed wrongful acts against Clem & Idona FLP or ratified acts taken by their co-conspirators against Clem & Idona FLP.

224.   Every Defendant herein acted as agent for every other Defendant, and all actions taken by one Defendant are attributable to and for the benefit of the conspiracy as a whole.

225.   Each Defendant participated in, contributed to, or facilitated D&Y FLP's breach of the fiduciary duties it owes to Clem & Idona FLP, including but not limited to through those actions listed in Paragraphs 210 (a) – (c).

226.    As a direct and proximate result of the foregoing, the Clem and Idona FLP has suffered irreparable harm, as well as monetary damages.  Accordingly, the Clem and Idona FLP is entitled to a judgment in the form of equitable relief (up to and including the judicial dissolution of D&Y FLP), injunctive relief, and monetary damages in an amount to be determined at trial, including interest, attorneys' fees, and costs incurred in this dispute.

## COUNT VI
## BREACH OF FIDUCIARY DUTY
**(By the Clem and Idona FLP on behalf of D&Y FLP Against the John and Tonya FLLLP, Tonya Darkenwald, Casey Darkenwald, and D&Y LLC )**

227.    Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

228.    D&Y LLC is a Minnesota limited liability company governed by Minn. Stat. ch. 322C and Minnesota common law.

229.    At all times relevant to this dispute, the Clem and Idona FLP has been a limited partner in D&Y FLP.

230.    At all times relevant to this dispute, D&Y LLC has been the General Partner of D&Y FLP, and owes various fiduciary, statutory, and common law obligations to D&Y FLP and the limited partners in D&Y FLP.

231.    At various times relevant to this dispute, the John and Tonya FLLLP has purported to act as the Manager of D&Y LLC and made governance decisions on behalf

of D&Y LLC, as General Partner of D&Y FLP, thus owing fiduciary, statutory, and common law duties to D&Y FLP.

232.    At various times relevant to this dispute, Casey and Tonya, respectively, have acted as the General Partner(s) of the John and Tonya FLLLP, in charge of acting on behalf of the John and Tonya FLLLP in its purported role as Manager of D&Y LLC and, thus, General Partner of D&Y FLP, owing various fiduciary, statutory, and common law obligations to D&Y FLP and the other limited partners in D&Y FLP.

233.    As set forth above in greater detail, the John and Tonya FLLLP, Tonya, Casey, and D&Y LLC have breached their respective fiduciary duties owed to D&Y FLP by, among other things, wasting the assets and resources of D&Y FLP.

234.    As a direct and proximate result of the foregoing, D&Y FLP has suffered irreparable harm, as well as monetary damages.  Accordingly, D&Y FLP is entitled to a judgment in the form of equitable relief (rescinding the Asset Management Agreement with Darkenwald Corporation as well as equitable relief including up to the potential judicial dissolution of D&Y FLP pursuant to Minn. Stat. §321.0802), injunctive relief, and monetary damages in an amount to be determined at trial, including interest, attorneys' fees, and costs incurred in this dispute.

**COUNT VII**
**UNJUST ENRICHMENT**
**(By the Clem and Idona FLP Against the John and Tonya FLLLP, the Gilbert FLP, and the George and Deborah FLP)**

235.    Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

236.    At all times relevant to this dispute, the Clem and Idona FLP has been a limited partner in D&Y FLP, entitled to the rights and protections granted to limited partners under Minn. Stat. ch. 321, the Partnership Agreement, and Minnesota common law.

237.    As a limited partner in D&Y FLP, the Clem and Idona FLP is entitled to share equally with all other limited partners in any distributions made by D&Y FLP, including both monetary and in-kind distributions.

238.    The Clem and Idona FLP has not received equal distributions from D&Y FLP, including being denied any and all access to the Cabin since 2021 and being denied a refund of its contributions to the maintenance and operation of the Cabin.

239.    Accordingly, the John and Tonya FLLLP, the Gilbert FLP, and the George and Deborah FLP have received disproportionate benefits in connection with D&Y FLP.

240.    The John and Tonya FLLLP, the Gilbert FLP, and the George and Deborah FLP have been unjustly enriched as a result of receiving disproportionate distributions from D&Y FLP, including disproportionate use of the Cabin.

241.    No reasonable justification exists for the unjust enrichments received by the John and Tonya FLLLP, the Gilbert FLP, and the George and Deborah FLP.

242.    It is inequitable to permit the John and Tonya FLLLP, the Gilbert FLP, and the George and Deborah FLP to retain and to continue to obtain their unjust benefits.

243.    No remedy at law exists to rectify the unjust enrichments received by the John and Tonya FLLLP, the Gilbert FLP, and the George and Deborah FLP to the detriment of the Clem and Idona FLP.

244.    As a direct and proximate result of the foregoing, the Clem and Idona FLP is entitled to a judgment in the form of equitable relief (declaring its right to use the Cabin on a proportional basis), injunctive relief (enjoining the other limited partners from denying the Clem and Idona FLP's use of the Cabin), and monetary damages in an amount to be determined at trial, including interest, attorneys' fees, and costs incurred in this dispute.

## COUNT VIII
## CIVIL THEFT
### (By the Clem and Idona FLP on behalf of D&Y FLP Against Darkenwald Corp.)

245.    Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

246.    Darkenwald Corp. stole the personal property of D&Y FLP when it took D&Y FLP's money for its own benefit under the guise of the Asset Management Agreement.

247.    As a result of Darkenwald Corp.'s theft, D&Y FLP has been damaged in an amount to be established at trial, plus interest, attorneys' fees and costs that have accrued and continue to accrue, and is entitled to recover those amounts, as well as additional statutory penalties in the amount of 100 percent of the amount of the stolen funds as permitted under Minn. Stat. § 604.14, subd. 1.

## COUNT IX
## CONSPIRACY TO COMMIT CIVIL THEFT
### (By the Clem and Idona FLP on behalf of D&Y FLP Against Darkenwald Corp., Casey Darkenwald, and Tonya Darkenwald)

248.    Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

249.   Darkenwald Corp. stole the personal property of D&Y FLP when it took D&Y FLP's money for its own benefit under the guise of the Asset Management Agreement.

250.   Defendants Casey and Tonya acted in concert as individuals and in their capacities as officers of Darkenwald Corp. to steal funds from D&Y FLP, as part of a common plan or purpose.

251.   Defendants Casey and Tonya manifested a meeting of the minds to achieve their joint purpose of stealing funds from D&Y FLP.

252.   Defendants either all individually committed wrongful acts, including all acts described above, against D&Y FLP or ratified acts taken by their co-conspirators against D&Y FLP.

253.   Every Defendant herein acted as agent for every other Defendant, and all actions taken by one Defendant are attributable to and for the benefit of the conspiracy as a whole.

254.   Each Defendant participated in, contributed to, or facilitated stealing funds from D&Y FLP.

255.   As a result of Darkenwald Corp.'s theft, D&Y FLP has been damaged in the amount to be determined at trial plus interest, attorneys' fees and costs that have accrued and continue to accrue, and is entitled to recover those amounts, as well as additional statutory penalties in the amount of 100 percent of the amount of the stolen funds as permitted under Minn. Stat. § 604.14, subd. 1.

## COUNT X
## EMBEZZLEMENT
**(By Clem and Idona FLP on behalf of D&Y FLP against John and Tonya FLLLP)**

256.    Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

257.    By virtue of the Asset Management Agreement John and Tonya FLLLP, in its capacity as Manager of the General Partner of D&Y FLP, entered into with Darkenwald Corp., John and Tonya FLLLP misappropriated funds from D&Y FLP, permanently depriving D&Y FLP of their use.

258.    At the time they embezzled the funds, John and Tonya FLLLP was aware that the money did not belong to Darkenwald Corp., but rather that the funds were entrusted to John and Tonya FLLLP, in its capacity as Manager of the General Partner of D&Y FLP.

259.    Ultimately, improper payments under the Asset Management Agreement have permanently deprived D&Y FLP of the funds belonging to D&Y FLP.

260.    D&Y FLP suffered damages as a result of John and Tonya FLLLP, Casey, and Tonya's intentional misconduct in an amount to be established at trial.

## COUNT XI
## CONSPIRACY TO COMMIT EMBEZZLEMENT
**(By Clem and Idona FLP on behalf of D&Y FLP against John and Tonya FLLLP, Casey Darkenwald, and Casey Darkenwald)**

261.    Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

262.    By virtue of the Asset Management Agreement John and Tonya FLLLP, in its capacity as Manager of the General Partner of D&Y FLP, entered with Darkenwald

Corp., John and Tonya FLLLP misappropriated funds belonging to D&Y FLP, permanently depriving D&Y FLP of their use.

263.   At the time they embezzled the funds, John and Tonya FLLLP and its General Partners Casey and Tonya, were aware that the money did not belong to Darkenwald Corp., but rather that the funds were entrusted to John and Tonya FLLLP, in its capacity as Manager of the General Partner of D&Y FLP.

264.   Ultimately, improper payments under the Asset Management Agreement have permanently deprived D&Y FLP of funds belonging to D&Y FLP.

265.   D&Y FLP suffered damages as a result of John and Tonya FLLLP, Casey, and Tonya's intentional misconduct.

266.   Defendants John and Tonya FLLLP, Casey, and Tonya acted in concert to misappropriate funds from D&Y FLP, as part of a common plan or purpose.

267.   Defendants John and Tonya FLLLP, Casey, and Tonya manifested a meeting of the minds to achieve their joint purpose of misappropriating funds from D&Y FLP.

268.   Defendants John and Tonya FLLLP, Casey, and Tonya either all individually committed wrongful acts, including all acts described above, against D&Y FLP or ratified acts taken by their co-conspirators against D&Y FLP.

269.   Each and every one of John and Tonya FLLLP, Casey, and Tonya acted as agent for every other Defendant, and all actions taken by one Defendant are attributable to and for the benefit of the conspiracy as a whole.

270.   Each Defendant participated in, contributed to, or facilitated misappropriating funds from D&Y FLP. As a result of these concerted actions, D&Y FLP

has been permanently deprived of the funds belonging to D&Y in an amount to be established at trial.

## COUNT XII
## VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
## 18 U.S.C. § 1961, *et seq.*
### (By Clem Darkenwald and Clem and Idona FLP against All Defendants)

271.    Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

272.    D&Y LLC, D&Y FLP, and Darkenwald Corporation are and were, at all relevant times, an "enterprise" within the meaning of RICO, 18 U.S.C. §1961(4).

273.    Each and every Defendant knowingly and intentionally committed the acts described above, and conspired to commit the acts described above, including but not limited to, depriving Clem and the Clem & Idona FLP of monetary and in-kind distributions, funneling funds out of the D&Y FLP through the Trust, and using the unlawful Asset Management Agreement to deprive Clem and the Clem & Idona FLP of their rightful share of D&Y FLP assets.

274.    All Defendants acted in association with a common purpose of committing those wrongful acts.

275.    All Defendants participated in the operation and management of D&Y LLC, D&Y FLP, and/or Darkenwald Corporation, or conspired to operate and manage D&Y

LLC, D&Y FLP, and/or Darkenwald Corporation in a manner that facilitated the scheme described in more detail, above.

276.    In the course of and in furtherance of the scheme to defraud and deny Clem of his rights as a Member of D&Y LLC and the Clem and Idona FLP of its rights as a limited partner in D&Y FLP, Defendants used the United States Postal Service, telephone, e-mail, and wrote checks, initiated and received wire transfers, and participated in other forms of electronic communication and payment on two or more occasions.

277.    Defendants' use of the United States Postal Service, telephone, e-mail, checks, wire transfers, and other forms of electronic communication and payment in furtherance of their improper scheme to deprive Clem and the Clem & Idona FLP of their financial and other rights constitute violations by Defendants of the mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, which in turn constitute a pattern of "racketeering activity" as defined in 18 U.S.C. §1961(1).

278.    As a result of Defendants' participation in the enterprise and the pattern of racketeering activity described above, Clem and the Clem and Idona FLP have been substantially injured.

## JURY DEMAND

279.    Plaintiff demands a jury trial on all issues so triable.

**WHEREFORE**, Plaintiffs demand judgment against Defendants and seek the following relief:

1.     With respect to Count I, a monetary judgment in favor of Darkenwald & Sons and against D&Y FLP in the amount of Darkenwald & Sons' deferred management fees and unpaid commissions earned under the Darkenwald & Sons Management Agreement;

2.     With respect to Count II, judgment in favor of Clem Darkenwald in the form of equitable relief rescinding all improper amendments and rescissions of the D&Y LLC governance documents; rescission of the improper transfer of the Membership interest of Gilbert Jr. to John and/or the John and Tonya FLLLP and/or the John Darkenwald Trust; injunctive relief compelling D&Y LLC to provide all requested financial and operational information to Clem; judicial dissolution of D&Y LLC pursuant to Minn. Stat. § 322C.0701 and equitable distribution of the value to the Members, including Clem; and monetary damages in favor of Clem Darkenwald and against D&Y LLC, John, Gilbert Jr., Casey, and the John and Tonya FLLLP, jointly and severally, in an amount to be determined at trial;

3.     With respect to Count III, judgment in favor of D&Y LLC in the form of equitable relief reforming the governance documents of D&Y LLC and repealing any improper amendments to the same; rescission of the improper transfer of the Membership interest of Gilbert Jr. to John and/or the John and Tonya FLLLP and/or the John Darkenwald Trust; judicial dissolution of D&Y LLC pursuant to Minn. Stat. § 322C.0701 and equitable distribution of the value to the Members, including Clem; injunctive relief; and monetary damages against the John and Tonya FLLLP, John, Gilbert Jr., Casey, and Tonya, jointly and severally, in an amount to be determined at trial.

4.     With respect to Count IV, judgment in favor of the Clem and Idona FLP in the form of equitable relief reforming the governance documents of D&Y LLC and repealing any improper amendments to the same; judicial dissolution D&Y LLC pursuant to Minn. Stat. § 322C.0701 and equitable distribution of the value to Members; injunctive relief; and monetary damages against the John and Tonya FLLLP, the Gilbert FLP, the George and Deborah FLP, Tonya, Casey, and D&Y LLC, jointly and severally, in an amount to be determined at trial.

5.     With respect to Count V, judgment in favor of the Clem and Idona FLP in the form of equitable relief reforming the governance documents of D&Y LLC and repealing any improper amendments to the same; judicial dissolution D&Y LLC pursuant to Minn. Stat. § 322C.0701 and equitable distribution of the value to Members; injunctive relief; and monetary damages against all Defendants, jointly and severally, in an amount to be determined at trial.

6.     With respect to Count VI, judgment in favor of the Clem and Idona FLP in the form of equitable relief judicially dissolving D&Y FLP and equitably distributing the value to the Partners; equitable relief granting the Clem and Idona FLP the right to use of the Cabin; injunctive relief enjoining the John and Tonya FLLLP, the Gilbert FLP, the George and Deborah FLP, Tonya, Casey, and D&Y LLC from interfering with the Clem and Idona FLP's fair and equitable use of the Cabin; injunctive relief enjoining D&Y FLP from liquidating any real estate holdings of D&Y FLP or otherwise disbursing or disposing of cash or assets without the input and approval of the Clem and Idona FLP; and a money judgment against the John and Tonya FLLLP, the Gilbert FLP, the George and Deborah

FLP, Tonya, Casey, and D&Y LLC, jointly and severally, in an amount to be determined at trial.

7.      With respect to Count VII, judgment in favor of the Clem and Idona FLP in the form of equitable relief declaring its right to use the Cabin on a proportional basis with all other limited partners of D&Y FLP; injunctive relief enjoining the John and Tonya FLLLP, the Gilbert FLP, and the George and Deborah FLP from denying the Clem and Idona FLP use of the Cabin; and a money judgment against the John and Tonya FLLLP, the Gilbert FLP, and the George and Deborah FLP, jointly and severally, in an amount to be determined at trial.

8.      With respect to Count VIII, judgment in favor of D&Y FLP rescinding the Asset Management Agreement with Darkenwald Corporation, entry of a money judgment against Darkenwald Corporation for its improper receipt of payments from D&Y FLP pursuant to the Asset Management Agreement in an amount to be determined at trial, and punitive damages of 100% of the value of the improper payments received by Darkenwald Corporation.

9.      With respect to Count IX, judgment in favor of D&Y FLP rescinding the Asset Management Agreement with Darkenwald Corporation, entry of a money judgment against Darkenwald Corporation for its improper receipt of payments from D&Y FLP pursuant to the Asset Management Agreement in an amount to be determined at trial, jointly and severally and statutory damages of an additional 100% of the value of the improper payments received by Darkenwald Corporation, jointly and severally.

10.     With respect to Count X, judgment in favor of D&Y FLP rescinding the Asset Management Agreement with Darkenwald Corporation, entry of money judgment against John and Tonya FLLLP in an amount to be determined at trial.

11.     With respect to Count XI, judgment in favor of D&Y FLP rescinding the Asset Management Agreement with Darkenwald Corporation, entry of money judgment against John and Tonya FLLLP, Casey Darkenwald, and Tonya Darkenwald, jointly and severally, in an amount to be determined at trial.

12.     With respect to Count XII, judgment in favor of Clem and the Clem and Idona FLP, injunctive relief preventing further deprivation of Clem and the Clem & Idona FLP's rightful monetary and in-kind distributions, funneling funds out of the D&Y FLP through the Trust, dissolution of the unlawful Asset Management Agreement; equitable relief requiring divestment from all Defendants of any funds obtained through the racketeering activities; dissolution of the D&Y FLP, D&Y LLC, Darkenwald Corporation, John and Tonya FLLLP, George and Deb FLP; money damages in an amount to be determined at trial, and treble damages.

13.     An award to Plaintiffs, and against Defendants jointly and severally, for Plaintiffs' costs, disbursements, and attorneys' fees incurred in connection with this litigation; and

14.     Such other relief as may be permitted under Minnesota law and which this Court deems equitable and just.

Dated: November 19, 2024                    WINTHROP & WEINSTINE, P.A.


By: /s/ *Gerald H. Fornwald*
Gerald H. Fornwald, #345647
Devon C. Holstad, #0398107
Miriam I.P. Solomon, #403758
225 South Sixth Street
Suite 3500
Minneapolis, Minnesota 55402
(612) 604-6400
gfornwald@winthrop.com
dholstad@winthrop.com
msolomon@winthrop.com

*Attorneys for Plaintiffs*

## ACKNOWLEDGMENT

The undersigned hereby acknowledge that pursuant to Minnesota Statutes §

549.211, Subd. 2, costs, disbursements and reasonable attorney and witness fees may be

awarded to the opposing party or parties in this litigation if the Court should find that the

undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is

costly to the other party, asserted an unfounded position solely to delay the ordinary

course of the proceedings or to harass; or committed a fraud upon the Court.

Dated: November 19, 2024                    WINTHROP & WEINSTINE, P.A.


By: /s/ *Gerald H. Fornwald*
Gerald H. Fornwald, #345647
Devon C. Holstad, #0398107
Miriam I.P. Solomon, #403758
225 South Sixth Street
Suite 3500
Minneapolis, Minnesota 55402
(612) 604-6400
gfornwald@winthrop.com
dholstad@winthrop.com
msolomon@winthrop.com

*Attorneys for Plaintiffs*

## **VERIFICATION**

Clement B. Darkenwald, being duly sworn, deposes and states as follows:

1.      I, Clement Darkenwald, individually, and as General Manager of The Clement and Idona Darkenwald Family Limited Partnership and as sole shareholder of Darkenwald & Sons Management Company, Inc., am a Plaintiff in this action, am familiar with the facts giving rise to Plaintiffs' claims set forth in this Complaint, and am familiar with the above-entitled matter.  I have personal knowledge of the facts attested to herein and I am authorized to make this Verification on behalf of all Plaintiffs.

2.      I have read the foregoing Verified Complaint and know the contents thereof. The facts alleged in the Verified Complaint are true and correct to the best of my knowledge, information and belief.

11/19/2024
Date

Clement B. Darkenwald
Clement B. Darkenwald

30198715v1

2