# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Clement B. Darkenwald; The Clement and Idona Darkenwald Family Limited Partnership; and Darkenwald & Sons Management Company, Inc.,

    Plaintiffs,

v.

D&Y Partners, LLC; The D&Y Family Limited Partnership; The John and Tonya Darkenwald Family Limited Liability Partnership; The George and Deborah Yankoupe Family Limited Partnership; The Gilbert R. Darkenwald Family Limited Partnership; George Yankoupe; The Estate of John F. Darkenwald; Gilbert R. Darkenwald; Casey Darkenwald; Tonya Darkenwald; Deborah Yankoupe; and Darkenwald Corporation,

    Defendants.

Civ. No. 24-4231 (JWB/SGE)

**ORDER ON
MOTIONS TO DISMISS**

---

Abigail Sokolowski, Esq., Devon Holstad, Esq., and Gerald H. Fornwald, Esq., Winthrop & Weinstine, P.A., counsel for Plaintiffs.

Jason R. Asmus, Esq., and Jordan Webeter, Esq., Taft Stettinius & Hollister LLP, counsel for the D&Y Defendants.

R. Henry Pfutzenreuter, Esq., Larkin Hoffman Daly & Lindgren Ltd., counsel for the John and Tonya Darkenwald Defendants.

Daniel J. Brown, Esq., Kirsten E. Schubert, Esq., and Luke Wetterstrom, Esq., Dorsey & Whitney LLP, and Daniel N. Rosen, Esq., counsel for the Yankoupe Defendants.

Michael R. Mergens, Esq., Entrepartner Law Firm, PLLC, counsel for the Gilbert and Casey Darkenwald Defendants.

This dispute stems from a long-standing dispute over governance, control, and financial management of family-owned business entities. At the center of it are D&Y Family Limited Partnership ("D&Y FLP") and its general partner D&Y Partners, LLC ("D&Y LLC"), entities engaged in real estate investment and management. Plaintiffs Clement ("Clem") Darkenwald and his family held business Clem and Idona FLP contend that family members and affiliated business entities intentionally schemed to consolidate power and exclude him from his proper role in governance over the D&Y enterprises through improperly amending company agreements, and by misallocating financial distributions and commissions to their own favored entities. Plaintiffs assert allegations under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), along with various state-law causes of action. Defendants move to dismiss the RICO claim under Rule 12(b)(6) for failure to state a claim.

Plaintiffs do not meet the pleading requirements for a RICO claim. The alleged predicate acts of mail and wire fraud do not satisfy the requirements to plead fraud. The allegations also do not demonstrate a pattern of racketeering activity, a distinct RICO enterprise, or a direct causal link between the alleged misconduct and Plaintiffs' claimed injuries. Because the RICO claim is the only basis for federal jurisdiction, the remaining state-law claims, which involve issues of corporate governance, contract interpretation, and fiduciary duties under Minnesota law, will be remanded to state court.

## PROCEDURAL HISTORY

Plaintiffs filed their initial complaint on November 19, 2024, followed by an Amended Complaint the next day, asserting twelve claims, including RICO as the sole federal cause of action. After a November 25, 2024 status conference, this Court dismissed the Amended Complaint under Fed. R. Civ. P. 8(a) for failing to provide a short and plain statement of the claims but granted leave to amend. On December 16, 2024, Plaintiffs filed a Second Amended Complaint ("SAC"), reducing the claims to eleven while retaining the RICO claim. Defendants now move to dismiss the SAC, arguing that Plaintiffs have failed to remedy the RICO deficiencies previously identified.

## BACKGROUND

Gilbert and Billie Darkenwald had four children—Clem, John, Gilbert ("Gil"), and Deborah. In 1995, Gilbert and Billie formed D&Y FLP, a holding company for several family real estate properties. (Doc. No. 50, SAC ¶ 22.) These properties now include agricultural land that includes a single-family home (the "Farmhouse"); a family cabin (the "Cabin"); and a commercial and industrial building (the "Midway Plaza"). (*Id.*) Along with the formation of the D&Y FLP, Gilbert and Billie entered into a Partnership Agreement that regulates D&Y FLP partners, including requirements for transfer of any partner's interests and amending the Partnership Agreement. (*Id.* ¶¶ 24–25.) The partnership interests in D&Y FLP were divided equally between Gilbert and Billie's four children's FLPs—(1) Clem and Idona FLP, (2) John and Tonya FLLLP, (3) Gil FLP, and (4) George and Deborah FLP. (*Id.* ¶ 26.)

In November 2006, D&Y LLC was formed and appointed general partner of D&Y FLP. (*Id.* ¶ 27.) Clem, John, and Gil were equal members. (*Id.* ¶ 28.) The three of them entered into a Member Control Agreement and an Operating Agreement, and shared "equal voice with respect to the operation of D&Y LLC." (*Id.* ¶¶ 28, 30, 32.) In March 2010, D&Y LLC retained Clem's company, Darkenwald & Sons Management Company, to provide management services for the Midway Plaza, and appointed Clem as D&Y LLC's Chief Manager and CEO. (*Id.* ¶¶ 36–37.)

According to the Second Amended Complaint, governance changes implemented in 2021 and 2022 by a series of written actions altered the structure of the D&Y entities, depriving Clem of his authority and placing control in the hands of his sibling's entity, the John and Tonya Darkenwald Family Limited Liability Limited Partnership ("J&T FLLLP"). (*Id.* ¶¶ 57, 59.)

As a part of these changes, Casey, John and Tonya's son, was appointed an Advisory Board Seat on the Board, and Clem's partial lease on the family-owned Cabin was terminated. (*Id.* ¶¶ 41, 43.) Months later, in September 2021, Clem's position as the Chief Manager of D&Y LLC and the Darkenwald & Sons property management contract were terminated, as was Clem's lease interest in the Farmhouse. (*Id.* ¶ 45.)

In July 2022, Casey's company, Darkenwald Corp., was appointed as the new asset management company. (*Id.* ¶¶ 70–71.) Amendments were also made to the Operating Agreements of both D&Y FLP and D&Y LLC, which permitted Gil to transfer his interests in both entities to John & Tonya FLLLP. (*Id.* ¶¶ 61, 63.)

4

Plaintiffs contend that the amendments through written actions were enacted unilaterally, without Clem's knowledge, and were taken in violation of existing agreements governing D&Y LLC and D&Y FLP. Defendants contest this point, asserting that their actions complied with Minnesota law, which states that "[a]n action required or permitted to be taken at a board meeting may be taken by written action signed by the number of governors that would be required to take the same action at a meeting of the board of governors at which all governors were present." Minn. Stat. § 322C.0407, subd. 4.

With Clem and his companies excluded from all D&Y decision-making, Plaintiffs allege Defendants "embarked on a pattern of racketeering activities . . . to deplete the assets of D&Y FLP and fraudulently funnel money and assets to select recipients." (*Id*. ¶ 69.) As part of this alleged scheme, D&Y FLP entered an Asset Management Agreement with Darkenwald Corp., agreeing to pay Darkenwald Corp. $15,000 per month plus a commission if D&Y FLP sold or refinanced any of its real estate assets. (*Id*. ¶¶ 70, 72.) Plaintiffs claim that this agreement served as a mechanism for self-dealing.

D&Y FLP subsequently sold the Midway Plaza for over $4.6 million, resulting in a $46,083 commission payment to Darkenwald Corp. (*Id*. ¶ 73.) Following the sale of the Midway Plaza, Defendants allegedly directed a disproportionate share of the sale's profits to themselves and affiliated entities, excluding Clem and his affiliates. (*Id*. ¶¶ 78, 80, 82–83.)

To facilitate and conceal their actions, Defendants allegedly used electronic communications and mail services. (*Id*. ¶¶ 67, 75, 79, 80, 84.) Plaintiffs also claim that

5

Defendants deliberately denied them access to critical financial records, preventing them from assessing the full extent of their exclusion from rightful distributions. (*Id*. ¶ 85.)

## DISCUSSION

### I. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a court must accept as true a complaint's factual allegations and draw all reasonable inferences in the plaintiff's favor. *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015). Although the plaintiff's factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). In assessing a claim's plausibility, conclusory allegations may be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding "conclusory" allegations "are not entitled to the assumption of truth").

### II. RICO claim

Section 1962(c) of Title 18 makes it "unlawful for any person employed by or associated with any enterprise engaged in . . . interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ." 18 U.S.C § 1962(c). The Act also creates a civil remedy for RICO violations. *Id.* § 1964(c). Despite its broad language, RICO does not cover all wrongdoing. Rather, "it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (quotations omitted).

To plead a viable RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *H & Q Props., Inc. v. Doll*, 793 F.3d 852, 856 (8th Cir. 2015) (quotations omitted). When the alleged racketeering activity is fraud, the predicate acts must be pleaded with particularity under Fed. R. Civ. P. 9(b). *See Crest Constr. II*, 660 F.3d at 353. The RICO elements must also be pleaded with respect to each individual defendant. *See Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008). In addition, a plaintiff must have been injured by the conduct constituting the violation. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

Plaintiffs claim that Defendants engaged in a pattern of racketeering activity—specifically mail and wire fraud—designed to defraud Clem and his family in violation of RICO. Plaintiffs allege that Defendants formed an association-in-fact enterprise, conspired for the common purpose of depriving Clem and the Clem & Idona FLP of their equitable share of distributions, and used mail and wire communication for fraudulent purposes to further the scheme. (SAC ¶¶ 151–55.) The SAC fails to state a RICO claim because Plaintiffs have not adequately pleaded mail or wire fraud, that the alleged association-in-fact enterprise had a structure that was separate and distinct from the racketeering activity, or that Plaintiffs' injuries were proximately caused by the purported racketeering activity.

### A. Predicate Acts

RICO defines "racketeering activity" as the commission of any of several predicate offenses. *See* 18 U.S.C. § 1961(1). Among those predicate offenses are mail

7

fraud and wire fraud. *See* 18 U.S.C. § 1341 (mail-fraud statute); 18 U.S.C. § 1343 (wire-fraud statute). When mail or wire fraud are alleged as the basis for a RICO claim, plaintiffs must plead: "(1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme." *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 406 (8th Cir. 1999).

A scheme to defraud must include "some degree of planning" and the intent to defraud. *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 991 (8th Cir. 1989) (quotations omitted). Proof of fraud "requires proof of deception or dishonesty." *Ill. Farmers Inc. Co. v. Mobile Diagnostic Imaging, Inc.*, No. 13-cv-2820 (PJS/TNL), 2014 WL 4104789, at *6 (D. Minn. Aug. 19, 2014).

Plaintiffs contend Defendants "conspired for the common purpose of depriving Clem and the Clem & Idona FLP of their equitable share of distributions" and used "D&Y LLC, D&Y FLP, the Trusts, and Darkenwald Corp. as vehicles for fraudulently funneling money out of D&Y FLP and disproportionately distributing it to themselves[.]" (SAC ¶ 152.) But the SAC fails to allege any fraudulent misrepresentations, material omissions, or deception directed at Plaintiffs. Rather, the allegations describe disputes over business control and financial decisions, which do not necessarily equal fraudulent conduct under RICO. Neither providing notice of the written actions via mail or email nor the delay in providing notice of the written actions shows deceit or fraudulent conduct. And simply labeling a transaction, commission, or distribution as fraudulent doesn't make it so. *See Com. Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644

8

(8th Cir. 1995) ("[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule.").

Furthermore, the mere use of email or financial transactions in business operations does not transform a governance dispute into mail or wire fraud. The mailing, for example, must be used "for the purpose of executing" the scheme. *United States v. Maze,* 414 U.S. 395, 405 (1974) (quoting 18 U.S.C. § 1341); *see also Schmuck v. United States,* 489 U.S. 705, 723 (1989) (Scalia, J., dissenting) ("[I]t is mail fraud, not mail and fraud, that incurs liability.").

Plaintiffs argue they have met the requirements for pleading the necessary fraud underlying the scheme and cite to *Abels v. Farmers Commodities Corp.*, for the proposition that the "fraudulent aspect" of the crime of mail fraud "is measured by a non-technical standard, condemning conduct which fails to conform to standards of moral uprightness, fundamental honesty, and fair play" and that misrepresentations are not required. 259 F.3d 910, 918 (8th Cir. 2001) (quoting *Atlas Pile Driving*, 886 F.2d at 991, and citing *Murr Plumbing, Inc. v. Scherer Bros. Fin.*, 48 F.3d 1066, 1069 n.6 (8th Cir. 1995)). *But see UMB Bank, N.A. v. Guerin*, 89 F.4th 1047, 1053 (8th Cir. 2024) ("Mail and wire communications are insufficient to establish the [RICO] continuity factor unless they contain misrepresentations themselves.") (quotations omitted).

Even if "misrepresentations" are not required in the communications that are the basis for the mail fraud, to support a claim of mail fraud the mailing must still have been used to "assist[] in carrying out the fraud." *Atlas Pile Driving*, 886 F.2d at 992. What is missing here are facts supporting an underlying fraud. The *Abels* case requires that a

9

plaintiff must "specifically allege the circumstances constituting fraud," including "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Abels*, 259 F.3d 920 (quotations omitted). In *Abels*, the complaint had allegations of what the misrepresentations were, when they were made, and who relied on them. *Id.* at 920. Here, we do not have allegations that false representations were ever made.

Stating that Defendants engaged in intentional acts, such as executing corporate documents or written actions, is not a particularized factual allegation suggesting that Defendants had an affirmative intent to defraud or that fraudulent activity occurred. *Cf. United States v. Goodman*, 984 F.2d 235, 237 (8th Cir. 1993) ("A scheme to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." (quotations omitted)).

Setting aside the mailings and wire transfers alleged, which admittedly do not contain the fraud or misrepresentations in them themselves, Plaintiffs do not identify a single fraudulent statement or omission designed to deceive that would be sufficient to plausibly state a scheme to defraud. Unquestionably, Plaintiffs accuse Defendants of scheming to remove Clem from any control in the governance of the D&Y entities and scheming to funnel distributions into their own pockets and excluding Clem, but missing from the Second Amended Complaint are facts supporting the who, what, when, where and how of the "deception" or the "plan" to deceive. Because the allegations fail to

establish fraudulent intent or deceptive conduct, fraud has not been sufficiently pled, which means Plaintiffs have not sufficiently pled mail or wire fraud either.

B.     **Pattern of Racketeering**

A pattern of racketeering requires at least two related predicate acts that pose a continuing threat of criminal conduct. *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009). Even if a "scheme to defraud" were assumed, at most the SAC describes a single scheme within a single business dispute. While Plaintiffs attempt to deconstruct the dispute into myriad separate acts to establish a pattern, all of the conduct is part of a singular family dispute over management and governance of the family business interests.

Courts routinely dismiss RICO claims that involve only one scheme, one set of victims, and one alleged purpose, because they do not establish the continuity required for a pattern of racketeering activity. *See, e.g.*, *Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank*, 934 F.2d 976, 981 (8th Cir. 1991); *Nelson v. Nelson*, No. 14-4854 (ADM/LIB), 2015 WL 4136339, at *4 (D. Minn. July 8, 2015) (finding no pattern of racketeering when the alleged scheme "involving wire and mail fraud spanning 10 years" was not alleged "to have any other goal beyond increasing James' financial wealth at the expense of his brother, Steven"). Even accepting the allegations as true, the SAC describes a discrete family dispute over control of assets, rather than an ongoing criminal enterprise that poses a continued threat.

### C. Enterprise

The RICO statute prohibits an "enterprise" from engaging in the predicate acts of racketeering. *Bennett v. Berg*, 685 F.2d 1053, 1060 (8th Cir. 1982), *on reh'g*, 710 F.2d 1361 (8th Cir. 1983). An "association-in-fact" enterprise must have three structural features: "(1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). There also must be allegations that support the existence of an enterprise with "an ascertainable structure distinct from the conduct of a pattern of racketeering." *Ill. Farmers Inc.*, 2014 WL 4104789, at *14; *see also United States v. Turkette*, 452 U.S. 576, 583 (1981). Put another way, the association-in-fact enterprise must function as a continuing unit beyond the pattern of racketeering activity. *See Boyle*, 556 U.S. at 945, 947; *Turkette*, 452 U.S. at 583.

The SAC has no allegations that indicate that all Defendants act as a continuing unit with a shared purpose beyond the scheme alleged. In the SAC, Plaintiffs identify twelve Defendants but do not allege continuing relationships among them all that could satisfy the RICO enterprise element. *See Stephens, Inc. v. Geldermann, Inc.*, 962 F.2d 808, 815 (8th Cir. 1992) (explaining there was no association-in-fact when the only link between the parties was their participation in the fraud scheme); *Sebrite Agency, Inc. v. Platt*, 884 F. Supp. 2d 912, 919–20 (D. Minn. 2012) (holding plaintiffs did not assert a plausible inference of an association-in-fact enterprise because they did not allege "an enterprise that has an ascertainable structure that is distinct from the predicate acts of mail and wire fraud"). It is not enough that each Defendant would continue to exist. The

question is whether the association-in-fact enterprise would still exist. Here, no facts are alleged showing that it would.

Nor have Plaintiffs alleged how each Defendant engaged in the conduct of the enterprise. To establish the conduct element of their RICO claim, Plaintiffs must show "conduct by the defendants in association with the enterprise." *In re Sac & Fox Tribe of the Miss. in Iowa/Meskwaki Casino Litig.*, 340 F.3d 749, 767 (8th Cir. 2003). To plead this element, Plaintiffs must indicate that Defendants "participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). While control over the enterprise is not necessary, to participate in the conduct of an enterprise's affairs, "one must have some part in directing those affairs." *Id.* at 179; *see also Handeen v. Lemaire*, 112 F.3d 1339, 1348 (8th Cir. 1997) (stating a RICO defendant must have "some part in the direction" of its affairs) (quotations and emphasis omitted).

The SAC does not allege that each Defendant had some part in the direction of the enterprise's affairs. This is especially true as to Defendants George Yankoupe, Deborah Yankoupe, and the George and Deborah Yankoupe FLP ("the Yankoupe Defendants"). The Yankoupe Defendants are not alleged to have committed any fraudulent act. The only assertion against them is that they received trust distributions, which is not racketeering activity. Courts routinely dismiss RICO claims against defendants who merely receive financial benefits from an alleged scheme but do not participate in fraudulent conduct. Notably, there are no allegations that indicate that the Yankoupe Defendants controlled or directed the operation of D&Y LLC, D&Y FLP, Darkenwald Corps, or the Trust's affairs.

13

Similarly, no allegations indicate actions relating to the enterprise taken by Defendants the Estate of John F. Darkenwald or the John F. Darkenwald Revocable Trust UAD June 26, 1986. No allegation suggests that these Defendants knew that the written actions or distributions were unauthorized, let alone fraudulent.

Because Plaintiffs' RICO claims are based on predicate acts of fraud, they must allege each Defendant's participation in the enterprise under the Rule 9(b) heightened pleading standard. *See Crest Constr. II*, 660 F.3d at 358. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *H & Q Props., Inc., v. Doll*, No. 8:13CV38, 2014 WL 2919139, *6 (D. Neb. June 26, 2014) (quotations omitted). Although some actions alleged are attributed to John, Gil, or Casey, many allegations group all Defendants together. These allegations fail to provide notice to the Defendants of their individual roles in perpetuating any predicate acts of fraud and fail to allege how each individual Defendant participated in a RICO enterprise.

Plaintiffs fail to provide specific allegations of fraudulent conduct, deceptive intent, or enterprise participation for each Defendant. Because the enterprise element is not plausibly alleged, and the Yankoupe Defendants, among others, are not alleged to have engaged in any fraud, the RICO claim fails as a matter of law.

### D.     Proximate Cause

A civil RICO plaintiff must show injury "by reason of" a RICO violation, that is, injury "both factually and proximately caused" by the violation. 18 U.S.C. § 1964(c);

*Regions Bank v. J.R. Oil Co.*, 387 F.3d 721, 728 (8th Cir. 2004). Here, Plaintiffs' alleged injuries, which include exclusion from governance, lost assets or funds from mismanagement, and loss from improper distributions, all stem from corporate control disputes and corporate actions, not from mail or wire fraud. When the alleged harm is derivative of corporate disputes with no underlying predicate act, there is no RICO claim. *See Regions Bank*, 387 F.3d at 729–31 (finding plaintiff not injured "by reason of" a RICO violation, but by a different fraud not related to the alleged enterprise); *see also Ahn v. Hanil Dev., Inc.*, 471 F. App'x 615, 617 (9th Cir. 2012) (concluding plaintiff could not maintain RICO claims in his individual capacity on the basis of his status as a minority shareholder).

In sum, Plaintiffs have not alleged sufficient facts to support a reasonable inference that the governance changes enacted through written actions or the distributions of funds and assets were part of a fraudulent scheme. RICO does not cover every instance of wrongdoing, and courts reject attempts to convert ordinary business or civil disputes into RICO cases. *Crest Constr. II*, 660 F.3d at 353; *UMB Bank*, 89 F.4th at 1054.

Whether Defendants' actions breached contractual agreements or violated fiduciary duties owed to Plaintiffs is a separate legal question. Even if a breach occurred, such conduct does not, by itself, give rise to RICO liability. *H & Q Props.*, 2014 WL 2919139, *9 (citing cases).

While the Darkenwald brothers may have engaged in aggressive corporate maneuvering, Plaintiffs have not established fraudulent intent or conduct that meets

15

RICO's heightened pleading requirements. *See UMB Bank*, 89 F.4th at 1054. Accordingly, the RICO claim is dismissed.

### III. State Law Claims

Plaintiffs' remaining claims are based on state law. Based on its discretion, this Court declines to exercise supplemental jurisdiction over the remaining state-law claims. *See* 28 U.S.C. § 1367(a), (c)(3); *see Crest Const. II*, 660 F.3d at 359.

### ORDER

For the reasons stated, **IT IS HEREBY ORDERED** that:

1. Defendants D&Y Partners, LLC and the D&Y Family Limited Partnership's Motion to Dismiss the Second Amended Complaint (Doc. No. 54) is **GRANTED**;

2. Defendants George Yankoupe, Deborah Yankoupe, and the George and Deborah Yankoupe FLP's Motion to Dismiss (Doc. No. 62) is **GRANTED**;

3. J&T Defendants' Motion to Dismiss (Doc. No. 70) is **GRANTED**; and

4. Casey Defendants' Motion to Dismiss (Doc. No. 80) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: March 12, 2025

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge